### In re Kim WILLIAMS and LaJuanese Williams, Debtor(s).

### Bankruptcy No. 98 B 31550.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Jan. 20, 1999.

---

8. Of course the conduct still needs to be willful. *Hoffman v. Ustaszewski,* 71 B.R. 282 (Bankr. N.D.Ohio 1987).

911

Lorraine M. Greenberg & Assoc., Chicago, IL, for debtors.

D. Garth Sullivan, Chicago, IL, for American General Finance.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This Chapter 7 case is before the court on the debtors' motion to redeem an automobile from a second lien, a lien that is unsupported

by equity in the automobile. The motion is brought under § 722 of the Bankruptcy Code. (Title 11, U.S.C., the "Code"). The debtors do not propose to redeem the automobile from the first lien. Instead, one of the debtors has reaffirmed that debt. The second lienholder opposes redemption of its lien, arguing that the effect of redemption would be to "strip" the lien, in contravention of the Supreme Court's holding in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Having considered the parties' submissions, the court overrules this objection and grants the motion.

### Jurisdiction

Because the pending motion is specifically authorized by § 722 of the Code, it is a proceeding "arising under title 11," as set forth in 28 U.S.C. § 1334(b). The district court has jurisdiction over such proceedings, and may refer them to bankruptcy judges pursuant to 28 U.S.C. § 157(a). By General Rule 2.33, the District Court for the Northern District of Illinois has made such a reference. Bankruptcy judges have authority to enter appropriate orders in "core proceedings" arising in bankruptcy cases. 28 U.S.C. § 157(b)(1). The pending motion is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (O).

### Findings of Fact

Debtors Kim D. William ("Kim") and LaJuanese A. Williams ("LaJuanese") commenced this case by filing a joint petition for relief under Chapter 7 on October 6, 1998. In the schedules that accompanied the petition, the debtors listed General Motors Acceptance Corporation ("GMAC") as a creditor holding a claim secured by a 1997 Pontiac Grand Am (the "automobile"). Later, on November 18, 1998, LaJuanese entered into an agreement reaffirming indebtedness to GMAC in the amount of $14,122.79.

The parties do not dispute that the current value of the automobile is approximately $14,000.00,[1] and that GMAC holds a secured

1. For purposes of this memorandum, it is assumed that $14,000 is the amount that GMAC would receive if it were required to repossess and sell the automobile in the most beneficial manner it could. While that valuation standard measures the amount that the creditor would receive on a foreclosure sale under the Uniform Commercial Code, it has also been determined to be the appropriate standard for valuation of secured claims in redemptions under Code § 722. *See, e.g., In re Williams*, 224 B.R. 873, 876

claim under Code § 506(a) in that amount. However, it can be anticipated that as future payments are made on the loan, the amount of GMAC's lien will decrease. Absent other encumbrances on the automobile, the debtors would progressively acquire equity in the automobile.

The debtors' schedules list American General Finance ("AGF") as an unsecured creditor holding a claim in the amount of $3,060.00. Although not all relevant terms of the parties' agreement have been described in the pleadings on this motion, the debtors state that AGF holds a second lien on the automobile under a nonpurchase money loan and security agreement.[2] AGF'S lien is wholly unsecured, however, because GMAC's lien fully encumbers the automobile. On November 16, 1998, the debtors' trustee reported his determination that this is a no-asset case, indicating the trustee's conclusion that there was no equity in the vehicle. Upon abandonment, the debtors will take the automobile subject to any liens that have not been avoided, although their personal liability will be discharged with respect to underlying obligations that have not been reaffirmed.

Reasoning that AGF would receive no proceeds if GMAC were to foreclose on its loan and sell the automobile at the present time, the debtors filed the pending motion to redeem the automobile from AGF's lien for a nominal payment. The effect of redemption would be to avoid AGF's lien. Conversely, if redemption is not allowed, AGF would retain its lien on the automobile, allowing AGF to enforce its lien at some point in the future, when—because of the debtors' post-bankruptcy payments—the automobile would have value above the amount of GMAC's lien.

## Conclusions of Law

 The task of interpreting the meaning of a statute begins with the language of the statute itself. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). "The plain meaning of legislation should be conclusive, except in 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Id.* (citation omitted). "The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Union Bank v. Wolas*, 502 U.S. 151, 158, 112 S.Ct. 527, 531, 116 L.Ed.2d 514 (1991).

 Section 722 of the Code provides as follows for the redemption of certain property in which an individual debtor has an interest:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C. § 722. As applied here, the language of the statute would plainly permit redemption—the debtor's automobile is tangible personal property intended primarily for personal use; AGF's lien secures a dischargeable consumer debt; and there is no question about the "abandoned" status of the automobile.[3] Section 722 explicitly states

---

(Bankr.S.D.Ohio 1998); *In re Donley,* 217 B.R. 1004, 1007 (Bankr.S.D.Ohio 1998).

**2.** It is not clear whether the debtors are jointly liable on the indebtedness to AGF. Nor is it known whether collateral other than the automobile secures the indebtedness. The fact that the debtors bring this motion jointly suggests that the liability is a joint one, even though LaJuanese is the owner of the automobile. Notwithstanding the unanswered question whether the debtors are jointly liable to AGF, the determination made

here would be the same even if Kim lacks standing to seek redemption of the automobile.

**3.** Although automatic abandonment of an asset does not occur under § 554(c) of the Code until the case has been closed without administration of that asset, the entry of a no-asset report indicates the trustee's intent not to administer the asset. *See Helms v. Arboleda (In re Arboleda),* 224 B.R. 640, 645 (Bankr.N.D.Ill.1998) Given the trustee's issuance of a no-asset report in this case, the debtor could easily obtain a formal

that a debtor may redeem from "a" lien, implying that redemption may be from any one of multiple liens encumbering a lender's collateral. The plain language of the statute hardly precludes a debtor from choosing to redeem from one of multiple liens encumbering personal property that would otherwise qualify for redemption.

Legislative history supports this result. The House Report describing the proposed new provision for redemption states in relevant part as follows:

> Under the bill, the debtor may redeem from a secured creditor property that would be exempt in the absence of the security interest, or property that the trustee abandons, if the debtor pays the secured creditor the allowed amount of the creditor's secured claim. This right amounts to a right of first refusal on a foreclosure sale of the property involved. It allows the debtor to retain his necessary property and avoid high replacement costs, and does not prevent the creditor from obtaining what he is entitled to under the terms of his contract....
>
> In practical effect, this provision will permit the average consumer debtor to redeem his car from a nonpurchase-money security interest or judicial lien to the extent that the car would be exempt ...

H.R.Rep. No. 95–595, at 127–28 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6088–89.

This history is clear that the statute was intended to apply to abandoned property, and it was noted that § 722 would allow a debtor to redeem a car. Congress was concerned that because personal property intended primarily for personal, family or household use may have a high replacement

cost, secured creditors might use the threat of foreclosure to extract reaffirmation agreements that would pay them substantially more than their collateral was worth. Precisely this situation exists in the present case—AGF seeks the opportunity to extract payment from the debtor, through a reaffirmation agreement, based on the high cost to the debtors of replacing their vehicle, rather than on any equity that AGF could obtain through enforcement of its lien.[4]

Two bankruptcy courts have applied § 722, according to its terms, to allow redemption of a debtor's automobile from a wholly unsecured second lien. *In re Lombardi*, 195 B.R. 585, 587 (Bankr.W.D.N.Y.1996) (allowing redemption from second lien where debtor had reaffirmed agreement with first lender); *Altenberg v. General Finance Corp. (In re Altenberg)*, 1 Collier Bank. Cas.2d (MB) 807 (Bankr.S.D.Fla.1980). In both cases, the courts allowed redemption for a nominal payment, tied to the cost of obtaining a release of lien. There appear to be no decisions supporting AGF's position.

AGF has attempted to avoid the plain meaning of § 722 by arguing that the redemption sought by the debtors would (1) effectively allow the debtors to redeem their automobile in installments, contrary to the *Edwards* case, and (2) would allow lien stripping in Chapter 7, contrary to *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

The argument that debtors may not redeem by installments is commonly made in cases where, instead of choosing one of the options with respect to secured property set forth in Code § 521(2), a debtor seeks to retain the property and to continue to make

---

order requiring abandonment under § 554(b) of the Code.

**4.** Indeed, the economic reality is that, except for the reaffirmation agreement with GMAC, AFG would have had no ability to receive any recovery on its security interest. The Seventh Circuit has determined that if a Chapter 7 debtor wishes to retain property securing a debt, the debtor must either reaffirm the indetedness under Code § 524(c) or redeem the property. *In re Edwards*, 901 F.2d 1383, 1386 (7th Cir.1990) (interpreting § 521(2) of the Code). Had GMAC refused to enter into a reaffirmation agreement, the debt-

ors' alternatives would have been either to surrender the automobile or to redeem it from GMAC's lien. In either case, the value of GMAC's secured claim would have been the amount it would have received had it repossessed the automobile and sold it in the most beneficial manner it could. *See, e.g., In re Williams*, 224 B.R. 873, 876 (Bankr.S.D.Ohio 1998); *In re Donley*, 217 B.R. 1004, 1007 (Bankr. S.D.Ohio 1998). In either of these situations, AGF would have had a secured claim with no value, and would have received nothing on account of that claim.

regular payments on the underlying loan. If a debtor is allowed simply to continue regular loan payments instead of reaffirming, the loan will become nonrecourse when the debtor is discharged of personal liability for prepetition debts. *See Edwards,* 901 F.2d at 1384 n. 3. Several decisions have denied a debtor's request to retain the property under these circumstances, reasoning that a new arrangement would be forced on the creditor, negating Congressional intent that §§ 722 and 524(c) be construed together, and that reaffirmation under § 524(c) be voluntary. *Id.* at 1386 citing *In re Bell,* 700 F.2d 1053, 1056–57 (6th Cir.1983).[5]

Here, in contrast, LaJuanese reaffirmed the indebtedness to GMAC in an amount that exceeds the value of GMAC's collateral. As a consequence, LaJuanese will remain personally liable on the debt, and GMAC's lien will not be released until the loan is repaid in full. AGF, on the other hand, has no value in its lien. The debtors are also paying, in full, the nominal value of AGF's lien.

In *Dewsnup,* the Supreme Court held that § 506(d) of the Code cannot be read to allow a debtor to "strip down" a partially secured creditor's lien on real property to the value of collateral, as judicially determined, when that value is less than the amount of the claim secured by that lien. *Dewsnup,* 502 U.S. at 417, 112 S.Ct. at 778. One of the factors motivating the decision was the Court's concern that partial avoidance of the lien would contravene the expectations of mortgagor and mortgagee at the time of their bargain, and that it would constitute a departure from the pre-Code rule that liens pass through bankruptcy unaffected. *Id.,* 502 U.S. at 417–18, 112 S.Ct. at

778. The holding in *Dewsnup* was a narrow one, however. The Court warned: "Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations." 502 U.S. at 416, 112 S.Ct. at 778.

This case bears some similarity to *Dewsnup* in that the debtors have no equity in the automobile, and the automobile will be abandoned. However, a similar potential for windfall is not apparent, as LaJuanese will remain liable on the loan and pay the value of the automobile to GMAC. Also, because the lien at issue is that of a second lender that did not provide financing for the purchase of the automobile, AGF's expectations as to the likelihood of recovery on its loan would be lower than those of the mortgagee in *Dewsnup*.[6] However, and most significantly, *Dewsnup* does not control because the debtors do not seek relief under § 506(d). Section 722, as construed above, plainly allows the relief that the debtors seek, and *Dewsnup* says nothing about the interpretation of that section.

### Conclusion

For the reasons stated above, the debtors' motion to redeem their 1997 Pontiac Grand Am automobile from the unsecured second lien of American General Finance is granted.

---

**5.** There is a split of opinion among federal circuit courts of appeal on this question under Code § 521(2). Recent decisions discussing the controversy include *Bank of Boston v. Burr (In re Burr),* 160 F.3d 843 (1st Cir.1998) and *McClellan Federal Credit Union v. Parker (In re Parker),* 139 F.3d 668 (9th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 592, —— L.Ed.2d —— (1998).

**6.** Interestingly, since *Dewsnup,* two courts have granted motions under Code 506(d) to avoid junior liens on real estate where the claims sought to be avoided were wholly unsecured. *Yi v. Citibank (Maryland), N.A. (In re Yi),* 219 B.R.

394, 402 (E.D.Va.1998) (voiding third mortgage lien on realty); *Howard v. National Westminister Bank,* 184 B.R. 644, 647 (Bankr.E.D.N.Y.1995) (voiding judicial lien on previously mortgaged property, reasoning that due to nonconsensual nature of lien, underpinnings of *Dewsnup* were inapplicable). *But see Laskin v. First Nat'l Bank of Keystone (In re Laskin),* 222 B.R. 872, 876 (9th Cir. BAP 1998) (finding that Chapter 7 debtor lacked standing to seek avoidance of second mortgage lien on residence). *See also Crossroads of Hillsville v. Payne,* 179 B.R. 486, 490–91 (W.D.Va.1995) (collecting cases that deny motions to avoid subordinate liens).