**In re Ricky J. VIRELLO (d/b/a U.S. Bikers) and Kathleen A. Virello, Debtors.**

**Bankruptcy No. 98–03751–W.**

United States Bankruptcy Court, D. South Carolina.

March 31, 1999.

Herman F. Richardson, Jr., Prosperity, SC, for debtors.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Debtors' motion to value collateral pursuant to 11 U.S.C. § 506.[1] Based upon the arguments of counsel and a review of the Chapter 7 file, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On April 30, 1998, the Debtors filed a voluntary Chapter 7 petition with this Court. The schedules and statements list a fee simple ownership of a residence located at Route 2, Box 347, St. Matthews, South Carolina with a value of $150,000.00. The schedules and statements also reflect a first mortgage on this property held by Crestar Mortgage Corporation ("Crestar") in the amount of $152,943.00. The residence is also security, along with business inventory, for a second mortgage in the amount of $82,815.78 held by The Money Store Investment Corporation (the "Money Store").[2]

On May 22, 1998, an Order of the Court was entered lifting the automatic stay to allow the Money Store to repossess and liquidate the inventory which the Court assumes has now taken place. The schedules reflect that the inventory had a value of less than the total claim indicating that the Money Store may have to look to its second mortgage lien for collection of the balance of its claim. There is apparently no dispute between the parties that the value of the residence does not exceed the balance of the first mortgage claim and therefore that the value of The Money Store's secured claim based only on the second mortgage lien is presently $0.

After an initial notice of no dividends, the Chapter 7 Trustee declared the case an asset case and administered the sale of a motorcycle and filed a report of sale indicating collection of $5,400.00 for the estate. Although the residence has not been formally abandoned, it does not appear that the Trustee intends to administer it for the benefit of the estate and that it will be abandoned upon the closing of the case. Therefore, the case appears ready for closing in the near future.

On September 9, 1998, the Debtors filed the within motion to value the second mortgage claim of the Money Store at $0.00 based upon the value of the residence and the first mortgage position of Crestar. While there were no objections to the Debtors' motion, this Court entered the following Order on October 30, 1998:

THIS MATTER comes before the Court upon the Debtors' motion to value collateral (real estate) filed September 9, 1998. No objection to the motion has been filed, however the Court questions the effect of an Order granting the motion.

The Debtor seeks the determination that the second mortgage lien held by The Money Store Investment Corp. is of no value. However, the Debtor may not "strip down" liens through a valuation of collateral in a Chapter 7 case. *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Furthermore,

---

1. Further references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* shall be by section number only.

2. The Money Store initially filed a secured claim for $82,815.78, but after stipulating that the residence presently had no value beyond the first mortgage claim the Money Store filed an unsecured claim in that same amount on November 23, 1998.

it appears that the Chapter 7 Trustee has not indicated an intention to dispose of the collateral and therefore the estate is not benefitted by the valuation process.

For these reasons, it appears that the Debtors' motion should be denied. However, the Court notes that there were no objections filed and therefore, if the Debtors wish a formal hearing on this matter, the Debtors may request one in writing within ten (10) days of the entry of this Order.

AND IT IS SO ORDERED.

In response to the October 30, 1998 Order, the Debtors requested a hearing which was held on November 23, 1998. Present at the hearing were counsel for the Debtors and counsel for the Money Store. At the hearing, the Money Store stipulated that since the present value of the residence is less than the first mortgage, its claim as to the residence would presently have a value of $0. However, the Money Store strongly objected to the motion in so far as it would serve to void its second mortgage lien on the residence.

## CONCLUSIONS OF LAW

■ Section 506(a) and (d) of the Bankruptcy Code provide as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(a) and (d). In 1992, the United States Supreme Court issued its *Dewsnup* opinion finding that a Chapter 7 debtor could not strip down an undersecured creditor's lien to the judicially determined value of the collateral pursuant to § 506(d).

Therefore, we hold that § 506(d) does not allow petitioner to "strip down" respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502. Were we writing on a clean slate, we might be inclined to agree with petitioner that the words "allowed secured claim" must take the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected.

*Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

The Court held among other things that § 506 was somewhat ambiguous, that pre-Code bankruptcy law provided that liens pass through bankruptcy unaffected, and that an increase in the value of the property prior to foreclosure should benefit the creditor. In sum, *Dewsnup* indicated that § 506(d) was not available for use by a Chapter 7 debtor in a liquidation case. A critical dissent was written by Justice Scalia which argues that the plain and sensible interpretation of § 506 would not allow for the decision of the majority.

Legal scholars have criticized the *Dewsnup* decision on three primary grounds; (1) that the decision is inconsistent with the plain meaning of the language used in § 506; (2) that the preservation after discharge of a creditor's lien which has no value and on which the underlying claim has been discharged would impair a Chapter 7 debtor's fresh start; and (3) that the *Dewsnup* decision does not reflect the likely result under state law absent the bankruptcy because the interest of an undercollateralized secured creditor is not limited to the amount the creditor would realize upon the commercially reasonable disposition of the collateral.

Critics of *Dewsnup* argue for its limitation and rely upon the fact that the ruling was restricted to the facts of the case before it.

> Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute [§ 506] in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before and allow other facts to await their legal resolution on another day.

*Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. at 778.

The great majority of Courts have held that the *Dewsnup* decision limited its prohibition to Chapter 7 cases and not to reorganization cases under Chapter 11, 12 or 13. *Wade v. Bradford,* 39 F.3d 1126 (10th Cir.1994) (Chapter 11), *Harmon v. Farmers Home Administration,* 101 F.3d 574 (8th Cir.1996) (Chapter 12) and *Sapos v. Provident Institution of Savings,* 967 F.2d 918 (3rd Cir.1992) (Chapter 13). This Court similarly has held *Dewsnup* is not applicable in a Chapter 11 case. *In re Rosewood Investors Ltd. Partnership,* 95–73543–W (Bkrtcy.D.S.C.5/20/96) (Unpubl.). However, the majority of jurisdictions have found that *Dewsnup* applies to nonconsensual liens, not merely consensual liens like a mortgage.

The in rem aspect of a judgment is equally as viable in the context of a nonconsensual lien as in that of a consensual one. *Dewsnup,* 502 U.S. at 418, 112 S.Ct. at 778.

*In re Swiatek,* 231 B.R. 26 (Bkrtcy.D.Del. 1999). *Also see In re Wessel,* 161 B.R. 155 (Bkrtcy.D.S.C.1993) (*Dewsnup* prohibition on stripping down tax lien), *In re Esler,* 165 B.R. 583 (Bkrtcy.D.Md.1994) (*Dewsnup* prohibition on stripping down judgment lien is equally applicable to consensual and nonconsensual liens), *Schroeder v. First Union Nat. Bank of Virginia,* 182 B.R. 723 (D.Md.1995) (judicial lien can not be avoided), *In re Phillips,* 197 B.R. 363 (M.D.Fla.1996) (chapter 7 debtor has no standing pursuant to *Dewsnup* to avoid tax lien), *In re Place,* 173 B.R. 911 (Bkrtcy. E.D.Ark.1994) (*Dewsnup* prohibition on stripping tax lien) and *Matter of Windham,* 136 B.R. 878 (Bkrtcy.M.D.Fla.1992) (*Dewsnup* prohibition applies to personal and real property).

Recently, two cases, *In re Howard,* 184 B.R. 644 (Bkrtcy.E.D.N.Y.1995) and *In re Yi,* 219 B.R. 394 (E.D.Va.1998) have held that the *Dewsnup* prohibition does not apply to an allowed secured claim if at that time there is no value in the collateral to cover any part of the subject lien and therefore § 506(d) may operate to "strip off" the lien.

> In *Dewsnup,* the Chapter 7 debtor was attempting to "strip down" a mortgagee's lien on real property to a judicially determined value of the collateral, where the claim was secured by a mortgage lien and allowed under Section 502 of the Bankruptcy Code. In that case, the value of the collateral exceeded the value of the first mortgage, leaving excess value to which a portion of the second mortgage could attach.

> Although at first blush the Supreme Court's holding in *Dewsnup* appears to close the door on any type of lien modification under Sections 506(a) and (d) of the Code in a Chapter 7 case, a careful reading of *Dewsnup* and its limited hold-

ing proves otherwise. The Supreme Court's decision in *Dewsnup* turned in large part on the specific facts of that case and the Court's interpretation of Section 506(a) and (d) of the Code, in conjunction with the pre-Code rule that liens pass through bankruptcy unaffected.

*In re Howard,* 184 B.R. at 646. The District Court for the Eastern District of Virginia has taken a similar approach to *Dewsnup.*

In *Dewsnup,* only a portion of the value of the loan exceeded the value of the property. Here, the full value of Citibank's lien exceeds the value of the collateral that is not already pledged to secure other loans. Indeed, that latter value is $0; there is no collateral not secured by prior deeds. In other words, Citibank's lien is wholly unsecured. This conclusion is compelled by § 506(a)'s plain language, which dictates that Citibank's lien "is a secured claim to the extent of the value of [its] interest in the estate's interest in [the] property." Debtors, however, have no equity in the property. The first two deeds of trust have "eaten up" all the value of that property. In this regard, "the amount of debt secured by senior liens must be deducted in determining the extent to which the creditor holds an interest in the estate's interest in the collateral and, hence, the extent to which the secured creditor holds a secured claim." 4 *Collier* ¶ 506.03[5][b], at 506–34. Here, if the amount of debt secured by liens senior to Citibank's lien (approximately $192,000) is deducted from the value of the collateral (approximately $183,000), it is apparent that the value of Citibank's interest in the collateral is zero. As such, Citibank's claim is not secured.

This conclusion is further supported by the second part of § 506(a), which states that an allowed claim "is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." ... See *In re Geyer,* 203 B.R. 726, 728 (Bankr. S.D.Cal.1996) ("Since the value of the first priority deed of trust exceeds the value of the Residence, the value of the estate's interest in the Residence is zero. [The junior creditor's] interest in the estate's interest can be no greater than zero. Under section 506(a), [the junior creditor] would not have an allowed secured claim."); cf. *In re Lam,* 211 B.R. at 40 ("If a lien has no 'security' interest in the property of a debtor, its status as a lien is questionable."). Several leading texts support this analysis and result. See 8 *Collier* ¶ 1322.06[1][a], at 1322–16 ("If the creditor had held a lien on property that had no value (perhaps because the property was fully encumbered by prior liens), then under this analysis it would not have been a 'holder of a secured claim' ...."); Keith M. Lundin, *Chapter 13 Bankruptcy* § 4.46, at 4–56 (2d ed.) (concluding that "a completely unsecured claim holder ... could not have an allowable secured claim under § 506(a)"). As Judge Doumar has aptly put it, "Where there is no value underlying the claim, there is not a secured claim, despite the existence of a document to the contrary." In other words, "[t]he code does not generally classify creditors based on the existence of a piece of paper purporting to give a creditor rights in specified collateral, but rather on whether a creditor actually holds a claim supported by valuable estate property." Thus, the second part of § 506(a) provides further support for the conclusion that Citibank's lien is unsecured.

*In re Yi,* 219 B.R. at 397.

This Court understands the reasoning of *In re Howard* and *In re Yi* based upon a sensible plain understanding of the language of § 506; however, the United States Supreme Court has interpreted the statute otherwise and Congress has made no apparent attempt to correct that interpretation or clarify the statute. Under the

doctrine of stare decisis, this Court is constrained to follow the decision in *Dewsnup.* If one were to follow the reasoning of *Yi* in distinguishing *Dewsnup,* it would effectively render the Supreme Court's reasoning in *Dewsnup* meaningless.

■ This Court agrees with the Eighth and Ninth Circuits and many other jurisdictions that the *Dewsnup* decision stands for the proposition that § 506(d) alone does not operate to void a lien but that it must be used in connection with another statute such as § 722, § 1129, § 1225, or § 1325. Without more from Congress, a Chapter 7 debtor does not have standing to use § 506(d) to void a lien on real property which is abandoned or likely to be abandoned and therefore of no benefit to the estate.

... *Dewsnup* does not hold that § 506(d) prohibits lien-stripping in Chapter 7—it holds only that § 506(d) does not itself provide the authority for a debtor to strip down liens. *See Dewsnup,* 502 U.S. at 417, 112 S.Ct. at 778. The lien in *Dewsnup* remained on the property not because § 506(d) mandated that result, but because neither § 506(d) nor any other provision of the Code applicable in Chapter 7 gave the debtor the power to strip down the lien.

*Harmon v. Farmers Home Administration,* 101 F.3d at 581 recognizing that normally liens pass through bankruptcy unaffected citing *Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995) for the proposition that a lien was not extinguished where no proof of claim was filed and the debtor took no action to avoid the lien.

In a recent Bankruptcy Appellate Panel opinion from the Ninth Circuit, the Court found that the stripping off of a lien is expressly prohibited by *Dewsnup.*

Section 506(d) does not explicitly confer an avoiding power on a Chapter 7 debtor. *Oregon v. Lange,* 120 B.R. 132, 134 (9th Cir. BAP 1990); *Eakin v. Beneficial Idaho, Inc. (In re Eakin),* 156 B.R. 59 (Bankr.D.Idaho 1993)

. . .

§ 506 confers no standing on anyone. As we have previously stated, " § 506(d) provides the avoidance consequences of implementing a host of discrete powers conferred in other parts of the Code rather than acting as an avoiding power per se." *Lange,* 120 B.R. at 135.

. . .

There are two reported Chapter 7 cases in which the lien sought to be avoided was totally, as opposed to partially, unsecured; both reached the result Laskin urges. Oddly, he did not cite *In re Howard,* 184 B.R. 644 (Bankr.E.D.N.Y. 1995); the second, *In re Yi,* 219 B.R. 394 (E.D.Va.1998) was decided after his brief was submitted. In neither *Howard* nor *Yi* does the court indicate whether there was any prior claim allowance proceeding. Both conclude that, since there was no equity to which the lien in question could attach and there could be no secured claim under § 506(a), the lien could therefore be avoided under § 506(d). With all respect to those courts, we think that analysis reverses the statutory process. *Dewsnup* teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d). Absent either a disposition of the putative collateral or valuation of the secured claim for plan confirmation in Chapter 11, 12 or 13, there is simply no basis on which to avoid a lien under § 506(d).

Further, whether the lien is wholly unsecured or merely undersecured, the reasons articulated by the Supreme Court for its holding in *Dewsnup,* 502 U.S. at 417, 112 S.Ct. 773, 116 L.Ed.2d 903—that liens pass through bankruptcy unaffected, that mortgagee and mortgagor bargained for a consensual lien which would stay with real property until foreclosure, and that any increase in value of the real property should accrue to the benefit of the creditor, not the debtor or other unsecured creditors—

are equally pertinent. Neither Laskin nor the courts in *Yi* and *Howard* propound any rationale for distinguishing. *In re Laskin*, 222 B.R. 872, 874–876 (9th Cir. BAP 1998). A recent opinion from the Bankruptcy Court for the District of Delaware reached a similar conclusion.

> Although in *Dewsnup* the claim was undersecured, not totally unsecured, we think the same result obtains under the *Dewsnup* rationale when the claim is completely unsecured in a chapter 7 and no objection to the claim has been filed and sustained. The Supreme Court has decided that the increase over the judicially determined valuation of the property inures to the benefit of the mortgagee, not the debtor. *Dewsnup*, 502 U.S. at 417, 112 S.Ct. at 778. We can discern little reason why the same principle does not apply to nonconsensual lienors.

*In re Swiatek*, 231 B.R. at 29–30. This Court agrees and is of the opinion that for *Dewsnup* to have meaning, it must be applied to instances of "strip off" of liens as much as it does to the "strip down" of liens, the difference being primarily one of degree.[3]

While § 506 applies to Chapter 7 cases by virtue of § 103(a), *Dewsnup* recognizes that its plain language implies that a claims allowance process must be involved before § 506 applies.

> Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain.
>
> Such surely would be the result had the lienholder stayed aloof from the bankruptcy proceeding (subject of course, to the power of other persons or entities to pull him into the proceeding pursuant to § 501), and we see no reason why his

acquiescence in that proceeding should cause him to experience a forfeiture of the kind the debtor proposes. It is true that his participation in the bankruptcy results in his having the benefit of an allowed unsecured claim as well as his allowed secured claim, but that does not strike us as proper recompense for what petitioner proposes by way of the elimination of the remainder of the lien.

*Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. at 778. By its plain language, § 506(d)(2) clearly does not provide for the voiding of a lien if no claim is filed under § 501 and allowed under § 502 as occurs in a no asset case. The legislative history of § 506(d) further supports this requirement that allowance of the claim be at issue in the case before a lien may be voided.

> The House amendment deletes section 506(d)(3) of the Senate amendment, which insures that a tax lien securing a nondischargeable tax claim is not voided because a tax authority with notice or knowledge of the bankruptcy case fails to file a claim for the liability (as it may elect not to do, if it is clear there are insufficient assets to pay the liability). Since the House amendment retains section 506(d) of the House bill that a lien is not voided unless a party in interest has requested that the court determine and allow or disallow the claim, provision of the Senate amendment is not necessary.

Notes of Committee on the Judiciary, House Report No. 95–595, Legislative Statements. In a no asset case, the discharge of debtor in no way is dependent upon whether or not claims are filed. See 11 U.S.C. § 727(b). However, in a reorganization process, claims are necessarily addressed in the confirmation of the plan process.

> In contrast to Chapter 13, where claims must be allowed or disallowed to determine what gets paid through the plan, and the would-be secured creditor whose claim is allowed only as unsecured gets

---

**3.** The Supreme Court in *Dewsnup* did not condition the secured creditor's right to fu-

ture appreciation on its retention of a lien of some, as opposed to no, present value.

paid as an unsecured creditor, the allowance of a secured claim, or determination of secured status is meaningless in a Chapter 7 where the trustee is not disposing of the putative collateral.

*Dewsnup* teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d). *Absent either a disposition of the putative collateral or valuation of the secured claim for plan confirmation in Chapter 11, 12 or 13, there is simply no basis on which to avoid a lien under § 506(d).*

*In re Laskin,* 222 B.R. at 876 (emphasis added).

This begs the question of whether § 506(d) is applicable and available to debtors in a Chapter 7 asset case in which claims are filed. Under the reasoning of *Dewsnup* if a creditor has an allowed claim and a lien on property, § 506(d) is not operative. Therefore, this Court agrees with the Court in *Laskin* that the filing of claims in general in an asset case does not change the effect of *Dewsnup,* absent a disposition of the collateral or valuation of the claim for plan confirmation purposes in a reorganization case.

While this Court has considerable equitable powers and views sympathetically the plight of truly distressed debtors who have no bankruptcy remedy against such valueless mortgage liens, especially in this day of the mass marketing of consumer mortgage credit, 125% lending, and equity lines of credit, this Court cannot stand in the shoes of Congress to make laws. Despite the arguments against *Dewsnup,* it is nevertheless the law as interpreted by the highest court of the land. To distinguish *Dewsnup* so easily in a "strip off" situation is to ignore its reasoning, whether right or wrong, which this Court cannot do.

■■■■ This Court notes that *Dewsnup* does not apply to reorganization chapters and therefore debtors facing valueless mortgage liens may address them under an appropriate chapter of the bankruptcy laws.[4] Furthermore, there is no per se rule against successive Chapter 7 and Chapter 13 filings, the so-called Chapter 20. *Johnson v. Home State Bank (In re Johnson),* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).[5] Additionally, valueless personal property liens, such as liens on automobiles, boats, and mobile homes, may be eliminated by redemption under § 722, *In re Williams,* 228 B.R. 910 (Bkrtcy. N.D.Ill.1999) and judicial liens on exempt assets may be avoided pursuant to the 1994 Amendments to the Bankruptcy Code to § 522(f). See *In re Raines,* 98–01463–W (Bkrtcy.D.S.C. 4/22/98) (Unpubl.).

Regarding the argument that a debtor's fresh start is impaired by the prohibition announced in *Dewsnup,* the U.S. Supreme Court considered the argument and denied it. *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. at 777.[6]

This Court is not convinced that a "strip off" of a lien by a debtor in a Chapter 7 case is sufficient to distinguish it from the reasoning and precedent of the *Dewsnup*

---

4. While this Court recognizes the restrictions on modifying home mortgages in § 1322 and § 1123, in the case before the Court it is clear that the subject debt was secured by other property, the inventory, and therefore appears to be an exception to these statutes.

5. "It is increasingly common for debtors emerging from Chapter 7 to immediately file Chapter 13 as a method of dealing with claims that survived the Chapter 7 discharge or to control property that remains subject to liens. Sometimes called a 'Chapter 20,' the Chapter 13 case filed on the heels of a Chapter 7 discharge is not categorically forbidden by the Code but the practice raises many difficult issues." 1 *Keith M. Lundin, Chapter 13 Bankruptcy,* ¶ 1.81, at 1–87 (2d. ed.1994).

6. While it is also true that absent a bankruptcy filing, under state law, upon a foreclosure a second lien without value is likely to be removed without payment, if a debtor chooses to remain current in payments to the first lien holder, there is nothing to prohibit a second lienholder from retaining its lien and awaiting either an increase in the value of the property or a pay down of the first lien before exercising its rights.

decision. Therefore, for all of these reasons, it is,

**ORDERED,** that the Debtors motion to value collateral and to void the lien of The Money Store pursuant to § 506(d) is denied.

**AND IT IS SO ORDERED.**