In re John Joil CUNNINGHAM, Alicia Eulary Cunningham.

John Joil Cunningham, Alicia Eulary Cunningham, Plaintiffs,

v.

Homecomings Financial Network, et al., Defendants.

In re Donald E. Ryan, Jr., Harley A. Ryan.

Donald E. Ryan, Jr., Harley A. Ryan, Plaintiffs,

v.

Firstplus Financial, Inc., Defendant.

Bankruptcy Nos. 99–1–4579–DK, 99–1–8568–PM. Adversary Nos. 99–1–400–DK, 99–1–644–PM.

United States Bankruptcy Court, D. Maryland, at Greenbelt.

March 23, 2000.

**242**

Lawrence J. Anderson, Bobby Y. Lee, Rockville, MD, for plaintiffs John and Alicia Cunningham.

Wendelin I. Lipp, Alan D. Eisler, Jr., Bethesda, MD, for plaintiffs Donald E. and Harley A. Ryan.

Mark H. Friedman, Michael T. Cantrell, Baltimore, MD, for defendants.

## OPINION

PAUL MANNES, Chief Judge, and DUNCAN W. WEIR, Bankruptcy Judge.

Debtors Donald and Harley Ryan filed a complaint seeking to avoid wholly unsecured consensual liens pursuant to 11 U.S.C. § 506(d). Creditor Firstplus failed to answer the complaint. Debtors John and Alicia Cunningham filed a complaint seeking to avoid wholly unsecured consensual liens pursuant to 11 U.S.C. § 506(d). Creditor Homecomings moved to dismiss the complaint. Cross-motions for summary judgment were subsequently filed by debtors and Homecomings. The Bankruptcy Court, Paul Mannes, J., and Duncan W. Keir, J., held: 1. the determination of the chapter 7 strip off issue presented in these cases is controlled by the Supreme Court's decision in *Dewsnup v. Timm;* 2. debtors may not invoke 11 U.S.C. § 506(d) alone to avoid wholly unsecured consensual liens.

### MEMORANDUM OF DECISION

Before the court are two adversary proceedings wherein chapter 7 debtors each seek an order of court "stripping off" junior liens. Debtors urge that because their interest in the property is subject to senior liens securing claims in an amount that exceeds the value of the property, the claims secured by junior liens are not allowed secured claims. This results because the junior claims are not secured by any interest in debtors' property. 11 U.S.C. § 506(a). Therefore, debtors argue, the junior liens should be avoided pursuant to 11 U.S.C. § 506(d).

Because we find that the determination of this issue is controlled by the Supreme Court's decision in *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the court will enter judgment in

favor of the defendants. The language of the *Dewsnup* majority opinion permits no other result, even though the cases at hand involve wholly unsecured claims that are sought to be "stripped off," as opposed to the single partially undersecured claim in *Dewsnup* that was sought to be "stripped down."

## CUNNINGHAM

The Cunninghams' property is subject to the liens held by Homeside Lending Inc., Homecomings Financial Network (Homecomings), Commercial Credit Corporation and Household Finance Corporation in that order. There are four recorded deeds of trust. The amounts due to each of the lien holders as set forth in either a proof of claim filed by the creditor or by debtor's schedules are:

| | |
|---|---|
| Homeside Lending Inc. First Deed of Trust | $155,449.52 |
| Homecomings Second Deed of Trust | $ 47,626.99 |
| Commercial Credit Corporation Third Deed of Trust | $ 10,334.28 |
| Household Finance Corporation Fourth Deed of Trust | $ 10,069.17 |

Commercial Credit Corporation and Household Finance Corporation failed to answer the complaint. Defendant Homecomings moved to dismiss the complaint. Cross-motions for summary judgment were subsequently filed by plaintiffs and Homecomings. The parties stipulated that the value of the subject property is $137,500.00.

## RYAN

The Ryans' property is subject to the liens of Keystone Financial Mortgage Corporation (Keystone) and Firstplus Financial, Inc. (Firstplus) under two recorded deeds of trust. Plaintiffs filed a complaint stating that the value of the property is $179,000.00, and is subject to a first deed of trust in favor of Keystone in the amount of $181,768.00. The complaint also alleges that the property is subject to a second deed of trust in favor of Firstplus in the amount of $47,305.46. By virtue of the lien held by Keystone, plaintiff argues no equity exists in the property to secure Firstplus' claim.

Defendant Firstplus did not file an answer to the complaint. The Clerk of court entered a default as to Firstplus. The plaintiff subsequently filed a motion for default judgment. The entry of default results in an assumption that "the facts (but not conclusions)" set forth in the complaint are "true for the purpose of the request by [plaintiff] for entry of judgment by default." *In re Goycochea,* 192 B.R. 847, 847–48 (D.Md.1996). *Accord In re Greene,* 237 B.R. 872, 873 (D.Md.1999). By a default, however, a party admits only the well pleaded allegations of fact. The party "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Construction Co. v. Houston National Bank,* 515 F.2d 1200, 1206 (5th Cir.1975). *See Thomson v. Wooster,* 114 U.S. 104, 113, 5 S.Ct. 788, 29 L.Ed. 105 (1884) (default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true," and not "as of course according to the prayer of the bill"). After a default, it remains for the court to determine whether the unchallenged facts constitute a legitimate cause of action.

For purposes of this decision, the following facts are established: the value of the property is $179,000.00; the amount owed to the holder of the first deed of trust is $181,876.00; and the amount owed to the holder of the second deed of trust is $47,305.46.

Plaintiffs argue, pursuant to 11 U.S.C. § 506(a), that because the claims secured by the first deed of trust in each case do not leave any equity in the property, all subsequent mortgagees hold completely unsecured claims. Since the claims are unsecured, 11 U.S.C. § 506(d) allows the liens to be "stripped off." 11 U.S.C. § 506(a) and (d) provide:

**§ 506. Determination of secured status.**

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject

to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

\*    \*    \*    \*    \*    \*

(d) To the extent that a lien secures a claim against the debtor that is not an *allowed secured claim,* such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title (emphasis added).

It is uncontradicted that the holders of claims secured by the senior liens on each of the properties hold claims in excess of the value of the property. It is axiomatic that in the situation where creditors who are holders of claims that are secured by liens junior to senior undersecured liens, those junior lien holders are holders of unsecured claims. While Homecomings admits that it is the holder of a wholly unsecured claim, it argues nonetheless that the Court's holding in *Dewsnup* bars the chapter 7 debtors from using § 506(d) as a means to strip off consensual liens. The issue presented for determination is whether individual chapter 7 debtors may strip off wholly unsecured liens.

*Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), involved a single undersecured creditor that held a consensual lien against the chapter 7 debtor's real property. Collier provides a clear statement of the facts:

In *Dewsnup v. Timm,* the debtors were the owners of farmland encumbered by a deed of trust to secure a debt far in excess of the value of the property. After the debtors defaulted, the holder of the deed of trust sought to foreclose. Before the foreclosure could take place, the debtors filed for bankruptcy relief under the provisions of chapter 11. After the debtors' initial chapter 11 petition was dismissed (as was a second chapter 11 petition), the debtors filed for relief under chapter 7.

Pursuant to section 506(a), the debtors sought to have the bankruptcy court value the property at its fair market value of $39,000. This value was far less than the $120,000 owed to the secured creditor, and reflected a profound decline in the general market value of the farmland in the area where the property was located. In addition to seeking the valuation, the debtors also sought to employ section 506(d) to "strip down" the secured creditor's lien by reducing the amount of the debt secured by the lien ($120,000) to the judicially determined value of the property ($39,000), resulting in a secured claim of $39,000 secured by a lien on the property limited to $39,000, and an unsecured deficiency claim of $81,000. The intended effect was to remove the lien from the unsecured "deficiency" created by the process.

4 COLLIER ON BANKRUPTCY ¶ 506.06[1][a] (Lawrence P. King ed., 15th ed.1998). The issue presented was the meaning of the language "allowed secured claim" in § 506(d). This term could be construed as meaning either an allowed claim that is secured up to the value of the collateral as defined by § 506(a), or simply an allowed claim secured by a lien with no regard to its secured status under the bankruptcy code.

The Court concluded that within the context of § 506(d) "allowed secured

claim" means an allowed claim that is "secured by a lien with recourse to the underlying collateral." *See Dewsnup*, 502 U.S. at 415, 112 S.Ct. 773. The Court supported the contention that practitioners should read these words "term-by-term to refer to any claim that is, first, allowed, and, second, secured." *See id.* Section 502(a) and (b) expressly defines when claims are "allowed" in bankruptcy, thus no ambiguity existed as to that term. *See id.* Therefore, the real issue in *Dewsnup* was the meaning of "secured claim" as it is used in § 506(d). By concluding that "secured claim" merely refers to a claim secured by a lien, the Court effectively negated any argument that "allowed secured claim" means the same in § 506(d) as in § 506(a). *See id.* at 417, 112 S.Ct. 773. The Court stated:

> [Section] 506(d) does not allow petitioner to "strip down" respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502. Were we writing on a clean slate, we might be inclined to agree with petitioner that the words "allowed secured claim" must take the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected.

*See id.* (footnote omitted).

In reaching this conclusion, the Court stressed its desire to avoid freezing "the creditor's secured interest at the judicially determined valuation." *See id.* If this were allowed, "the creditor would lose the benefit of any increase in the value of the property by the time of the foreclosure sale." *See id.* The Court stated:

> We think, however, that the creditor's lien stays with the real property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee. The voidness language [in § 506(d)] sensibly applies only the security aspect of the lien and then only to the real deficiency in the security. Any

> increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain.

*Id.*

The majority reflected on the ambiguity of the language in § 506(d) and opined:

> When Congress amends the bankruptcy laws, it does not write "on a clean slate." *See Emil v. Hanley*, 318 U.S. 515, 521, 63 S.Ct. 687, 690–691, 87 L.Ed. 954 (1943). Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history. *See United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 380, 108 S.Ct. 626, 634, 98 L.Ed.2d 740 (1988). See also *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 563, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 244–245, 109 S.Ct. 1026, 1032–1033, 103 L.Ed.2d 290 (1989). Of course, where the language is unambiguous, silence in the legislative history cannot be controlling. But, given the ambiguity here, to attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims to the extent that they become "unsecured" for purposes of § 506(a) without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles.

*Id.* at 419–20, 112 S.Ct. 773.

Justice Scalia dissented in *Dewsnup* pointing out that the majority ignored the plain language of § 506 and employed a

tortured method of statutory interpretation. *See Dewsnup v. Timm,* 502 U.S. 410, 420–28, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). The majority opinion has been the subject of substantial criticism. *See, e.g.,* Lawrence Ponoroff & F. Stephen Knippenberg, *The Immovable Object Versus the Irresistible Force: Rethinking the Relationship Between Secured Credit and Bankruptcy Policy,* 95 MICH.L.REV. 2234 (1997); Margaret Howard, *Secured Claims in Bankruptcy: An Essay on Missing the Point,* 23 CAP.U.L.REV. 313 (1994); Barry E. Adler, *Creditors Rights After Johnson and Dewsnup,* 10 BANKR.DEV.J. 1 (1993); Margaret Howard, *Dewsnupping the Bankruptcy Code,* 1 J.BANKR.L. & PRAC. 513 (1992). While the opinion may be the subject of scholarly criticism, it remains the law of the land.

As noted, the facts in *Dewsnup* and the facts in the instant cases differ. The Timms were only partially unsecured, however, the defendants in the cases at hand are entirely unsecured. *See Dewsnup,* 502 U.S. at 413, 112 S.Ct. 773. Another distinguishing feature, albeit less significant, is the fact that the holders of the third and fourth liens on the Ryans' property had no expectation of enjoying any increase in the property value, so this was clearly not a basis of the bargain. At the time they extended credit to the debtor, each entity had knowledge of the first deed of trust held by virtue of the recorded instrument in the Land Records for Prince George's County, Maryland. During each subsequent loan transaction it is improbable, owing to the lack of equity in the property, that the lenders reasonably expected their liens to be satisfied through any potential foreclosure sale. However, this distinction is of no consequence.

Several other courts have published opinions with regard to the issue of the chapter 7 debtor's ability to "strip off" liens.[1] Two of these cases are illustrative. *In re Virello,* 236 B.R. 199 (D.S.C.1999); *In re Laskin,* 222 B.R. 872 (9th Cir. BAP 1998). In *Laskin,* the Ninth Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court's holding that *Dewsnup* bars the stripping off of an unsecured lien. *See id.* at 875. The court focused on the fact that there were no assets for distribution, noting that the "determination of secured status is meaningless in a Chapter 7 where the trustee is not disposing of the putative collateral." *See id.* at 876. Furthermore, § 506(d) was not intended to confer an additional avoiding power, and stripping off in this context was "clearly prohibited by Dewsnup." *See id.* In *Virello,* the Bankruptcy Court for the District of South Carolina reasoned that *Dewsnup* stands for the simple proposition that "if a creditor has an allowed claim and a lien on property, § 506(d) is not operative.... [T]he filing of claims in general in an asset case does not change the effect of Dewsnup...." *See id.* at 206.

The Supreme Court recognized in the quoted language from the *Dewsnup* opinion that what the debtor sought to do was to redeem real property. In the context of a chapter 7 liquidation, however, Congress afforded debtors a limited right to redeem property. 11 U.S.C. § 722 provides:

### § 722. Redemption.

An individual debtor may, whether or not the debtor has waived the right to

---

1. *See In re Laskin,* 222 B.R. 872 (9th Cir. BAP 1998) (concluding that Dewsnup's rationale applies to consensual liens that are wholly unsecured); *In re Cater,* 240 B.R. 420 (M.D.Ala.1999) (same); *In re Virello,* 236 B.R. 199 (D.S.C.1999) (same); *In re Wise,* 151 B.R. 116 (N.D.Ohio 1992) (same). *See also In re Swiatek,* 231 B.R. 26 (D.Del.1999) (concluding that Dewsnup's rationale applies to non-consensual judgment liens that are wholly unsecured); *Crossroads of Hillsville v. Payne,* 179 B.R. 486 (W.D.Va.1995) (same); *In re Mershman,* 158 B.R. 698 (N.D.Ohio 1993) (same). *But see In re Yi,* 219 B.R. 394 (E.D.Va.1998) (holding that creditor's wholly unsecured consensual lien could be stripped off); *In re Howard,* 184 B.R. 644 (E.D.N.Y. 1995) (holding that creditor's wholly unsecured non-consensual judicial lien could be stripped off).

redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

This right of redemption is limited to the tangible personal property that the debtor has claimed as exempt. It is accomplished by paying the holder of the lien the cash value of the property sought to be redeemed. Had Congress intended to provide for the redemption of real property as well, it would have provided for that form of relief in the bankruptcy code. It did not. Moreover § 722 would be redundant if § 506(d) were interpreted so as to allow for lienstripping in chapter 7. This court's interpretation complies with the canon that courts should give effect, if possible, to every word used by the legislature in a statute. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979); *Tucker v. Waddell*, 83 F.3d 688, 690–91 (C.A.4 1996).

■ Section 506(d) standing alone does nothing.[2] The section is efficacious only upon combination with a lien-avoiding provision of the bankruptcy code. This was pointed out in *Virello* where the court stated:

> Dewsnup teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d). Absent either a disposition of the putative collateral or valuation of the secured claim for plan confirmation in Chapter 11, 12 or 13, there is simply no basis on which to avoid a lien under § 506(d).

2. The decision in *Dewsnup* dealt with a bankruptcy case under chapter 7. The great majority of cases following *Dewsnup* have limited its holding to the chapter 7 context. *See Johnson v. Asset Management Group*, 226 B.R. 364 (D.Md.1998) (holding that a debtor may

*In re Virello*, 236 B.R. at 206 (citing *In re Laskin*, 222 B.R. at 876). "[Section] 506(d) alone does not operate to void a lien but that it must be used in connection with another statute such as § 727, § 1129, § 1225, or § 1325." *Id.* at 204.

Appropriate orders will be entered.

"strip off" a consensual unsecured lien in a chapter 13 case pursuant to 11 U.S.C. § 1322(b)(2)); 4 COLLIER ON BANKRUPTCY ¶ 506.06[1][c] (Lawrence P. King ed., 15th ed.1998).