Harry D. Boul, Columbia, MO, for debtors.

Thomas M. Harrison, Columbia, MO, for Union Planters Bank, N.A.

George T. Johnson, Memphis, TN, Chapter 7 Trustee.

### MEMORANDUM ORDER

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the motion filed by Union Planters Bank, N.A., to dismiss the motion filed by Jimmie and Pamela Fitzmaurice to determine the secured status of Union Planters Bank under 11 U.S.C. § 506 and to avoid liens. For the following reasons, the Court will grant Union Planters Bank's motion to dismiss.

**In re Jimmie Ray FITZMAURICE, Pamela Kay Fitzmaurice, Debtors.**

No. 99–21398.

United States Bankruptcy Court, W.D. Missouri.

May 15, 2000.

## Facts

On November 17, 1999, Jimmie and Pamela Fitzmaurice filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In their schedules, the Fitzmaurices listed residential real property with a current market value in the amount of $67,000.00. For purposes of ruling on Union Planters Bank's motion to dismiss, the Court will accept this valuation as true and accurate. In their Schedule D, the Fitzmaurices disclosed that this real estate was collateral for a first mortgage in favor of Union Planters Bank with an unpaid balance in the amount of $67,-747.00; was collateral for a second mortgage in favor of Union Planters Bank with an unpaid balance in the amount of $17,-345.64; and was collateral for a third mortgage in favor of Union Planters Bank with an unpaid balance in the amount of $3078.53. This case is a no-asset Chapter 7, and creditors were advised not to file a proof of claim unless otherwise informed to do so.[1] The Chapter 7 Trustee has abandoned all non-exempt real or personal property, and on February 18, 2000, the Fitzmaurices were granted a general discharge.

On January 24, 2000, the Fitzmaurices filed a Motion for Determination of Secured Status Under § 506 and [to] Avoid Liens of Union Planters Bank. In their motion, the Fitzmaurices contend that under 11 U.S.C. § 506(a) of the Bankruptcy Code, Union Planters Bank's second and third mortgages are entirely unsecured, and, therefore, are avoidable and can be "stripped off" pursuant to 11 U.S.C. § 506(d). On March 22, 2000, Union Planters Bank responded with the motion to dismiss presently before the Court contending that the United States Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), in which the Supreme Court determined that a Chapter 7 debtor could not utilize section 506(d) to "strip down" a creditor's lien to the value of the collateral, is controlling authority that operates to block any attempt by the Fitzmaurices to "strip off" the two junior mortgages at issue.[2] Union Planters Bank requests that the Court dismiss the motion filed by the Fitzmaurices asserting that as a matter of law they are not entitled to "strip off" its junior liens.

On April 20, 2000, the Court held a hearing on this matter after which the Court took the issue under advisement.[3]

1. Union Planters Bank did file a proof of claim, however, for the first mortgage claiming a balance due in the amount of $66,-959.60. For purposes of ruling on Union Planters Bank's motion to dismiss, the Court will accept as correct the balance due as advanced by the Fitzmaurices, which exceeds the asserted value of the real estate. Union Planters Bank did not file proofs of claim for its second and third mortgages.

2. The term "strip down" is used when a mortgage is partially secured and partially unsecured, while the term "strip off" is used when a junior mortgage is totally unsecured. *See In re McCarron*, 242 B.R. 479, 482 n. 3 (Bankr.W.D.Mo.2000)(In this case, the bankruptcy court determined that pursuant to 11 U.S.C. § 1322(b)(2), a Chapter 13 debtor could "strip off" a totally unsecured junior mortgage from the homestead property, and could treat the junior mortgagee's claim as unsecured in her Chapter 13 Plan.). When a lien is "stripped off" the entire lien is removed; when a "strip down" occurs the partially secured lien is bifurcated and only the unsecured portion is removed from the collateral. *See Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36, 37 n. 2 (9th Cir. BAP 1997)(Chapter 13 debtor allowed to "strip off" totally unsecured junior lien from residential real property pursuant to section 1322(b)(2)). *But see In re Henline*, 242 B.R. 459, 464–65 (Bankr.D.Minn.1999)(Chapter 13 debtor may not utilize section 1322(b)(2) to "strip off" wholly unsecured junior lien from homestead). The Court determines the above-mentioned cases involving Chapter 13 debtors and the issue of "strip off" pursuant to 11 U.S.C. § 1322(b)(2) to be completely distinguishable from the present circumstances, and, accordingly, has not considered these cases, or other cases addressing the same issue, in rendering a decision herein.

3. At this hearing, the parties agreed to postpone a hearing to determine the value of the property pending the Court's ruling on this issue.

The Court has considered the arguments and briefs of counsel, has conducted its own independent research and is now ready to rule.

## Discussion

■ The issue to be resolved is whether a Chapter 7 debtor can utilize 11 U.S.C. § 506(d) to "strip off" a completely unsecured junior lien from real estate. Section 506, upon which the Fitzmaurices rely, provides in relevant part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

....

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506.

The Supreme Court's opinion in *Dewsnup v. Timm*, which Union Planters Bank suggests controls the Court's decision here, was analyzed in some depth by the Eighth Circuit Court of Appeals in *Harmon v. Farmers Home Administration*, 101 F.3d 574 (8th Cir.1996), albeit in a distinguishable context. The issue presented to the Eighth Circuit in *Harmon* was whether Chapter 12 of the Bankruptcy Code permitted a debtor to "strip down" an undersecured creditor's lien to the value of the collateral. The Eighth Circuit determined that "strip down" in Chapter 12 was permissible.

In *Harmon* the debtors had entered into a contract for deed to purchase 917 acres of real estate. Subsequently, the debtors obtained a loan from the Farmers Home Administration, now known as the Farm Service Agency, and granted the FSA a mortgage on the same property. Thereafter, the debtors filed for bankruptcy protection under Chapter 12. When they filed for bankruptcy, the debtors owed $113,800.00 on the contract for deed and $425,817.00 on the FSA loan. The FSA filed a proof of claim in the amount of $425,817.00 in the debtors' bankruptcy case. The FSA and the debtors stipulated that the land was worth $165,000.00, and the bankruptcy court entered an order establishing the value at that amount. The value of the FSA's secured claim was $51,200.00. The bankruptcy court confirmed the debtors' Chapter 12 Reorganization Plan in which they proposed to pay the FSA's secured claim, including interest at nine percent, in thirty annual payments of $4983.62 each. The debtors agreed to devote their projected disposable income during the three years following plan confirmation to payment of unsecured claims, including the FSA's unsecured claim for the balance of its loan. Specifically, the key language of the Plan provided that:

With respect to each allowed secured claim, the debtors' property has been valued as of the effective date of the Plan in an amount not less than the value of the claim. In addition, the holder of any claim, secured or impaired, shall retain its pre-petition lien securing such claim until such time that the claim is fully paid. Following payment of the claim, the holder of the claim shall release the lien.

The Plan also recited that the parties had stipulated that the FSA's secured claim was $51,200.00, and stated that after the debtors had made the thirtieth payment on the secured claim that the FSA would release any claim that it might have.

Over four years after confirmation, the debtors agreed to pay the FSA an additional $75,000.00 out of their disposable income to settle the FSA's objection to their discharge. Two more years passed, after which the bankruptcy court granted the debtors a discharge, which did not include the thirty-year repayment of the FSA's secured claim.

In the meantime, about nine months prior to the discharge the debtor-husband died and the debtor-wife sought to sell the land. The FSA notified the debtor-wife that it would require payment of the entire remaining balance of the loan, including the portion that was unsecured, before releasing its lien. The debtor-wife contended that she owed the FSA the balance of its secured claim and nothing more. The parties agreed that the debtor-wife could sell the land and place the sale proceeds in escrow pending resolution of the matter. The debtor-wife sold the land for $730,-000.00. She paid off the balance of the FSA's secured claim, which was $45,671.49. After payment of costs, the remaining proceeds in the amount of $587,798.00 were escrowed. The FSA claimed it was entitled to approximately $309,000.00 of the proceeds as the unpaid balance of the loan.

The debtor-wife brought a declaratory judgment action in district court. On cross-motions for summary judgment, the district court granted judgment in favor of the debtor-wife concluding that the FSA's lien was extinguished by the payment in full of the secured claim and the required payments on the unsecured claim. The FSA appealed and the Eighth Circuit affirmed.

In relevant part, the FSA relied on *Dewsnup v. Timm* for the proposition that because section 506(d) applies in Chapter 12, *Dewsnup* should be extended to Chapter 12 cases, and, accordingly, the Harmons could not "strip down" the lien to the value of the collateral. The Eighth Circuit discussed *Dewsnup* as follows:

> *Dewsnup* was a Chapter 7 liquidation case. Dewsnup owed a debt of approxi-

mately $120,000, secured by property worth $39,000, and sought to "strip down" the creditor's lien to the value of the property. Dewsnup's argument was based on § 506(d) of the Code, which appears to void liens to the extent that they exceed the value of the collateral. *See* 11 U.S.C. § 506(d) (1994)("To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void...."). The Supreme Court concluded that "allowed secured claim" in § 506(d) does not denote a claim that is allowed and fully secured, but rather a "claim [that] is secured by a lien and has been fully allowed." *Dewsnup*, 502 U.S. at 417, 112 S.Ct. at 778. In other words, if a claim is secured in the non-bankruptcy sense, without regard to § 506(a)'s bifurcation of claims into secured and unsecured claims, and it is allowed in the bankruptcy case, it cannot be voided or stripped down by § 506(d). The Court expressed no opinion as to the meaning of "allowed secured claim" in other sections of the Code. *See id.* at 417 n. 3, 112 S.Ct. at 778 n. 3.

The Court gave two general reasons for its conclusion. First, the Court was concerned that if the lien were stripped down, any subsequent increase in the value of the collateral would benefit the debtor, which it termed a "windfall." *Id.* at 417, 112 S.Ct. at 778. Second, the Court stated that before the enactment of the Code in 1978, "a lien on real property passed through bankruptcy unaffected." *Id.* at 418, 112 S.Ct. at 778. Indeed, the Court said:

> *Apart from reorganization proceedings, see* 11 U.S.C. §§ 616(1) and (10) (1976 ed.), no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt.

*Id.* at 418–19, 112 S.Ct. at 779 (citing, inter alia, *Long v. Bullard*[, 6 S.Ct. 917, 29 L.Ed. 1004 (1886)])(emphasis added).

Congress is presumed to have enacted the Code with an understanding of pre-Code practice, and the Court was reluctant to find a significant change without "at least some discussion in the legislative history." *Id.* at 419, 112 S.Ct. at 779....

*Harmon,* 101 F.3d at 580. The Eighth Circuit rejected the FSA's argument that *Dewsnup* should be extended to Chapter 12 cases stating:

We begin with the § 506(d) issue. The government argues that because § 506(d), considered in light of the general principle that liens pass through bankruptcy unaffected, does not authorize lien-stripping in Chapter 7, it does not authorize lien-stripping in Chapter 12 either. The government's argument is absolutely correct, but it proves very little. Harmon does not argue that § 506(d) strips down liens in Chapter 12, and the District Court did not so hold; indeed, any such argument would conflict with the Supreme Court's holding in *Dewsnup.* The problem with the government's argument is that *Dewsnup* does not hold that § 506(d) *prohibits* lien-stripping in Chapter 7—it holds only that § 506(d) does not itself provide the authority for a debtor to strip down liens. *See Dewsnup,* 502 U.S. at 417, 112 S.Ct. at 778. The lien in *Dewsnup* remained on the property not because § 506(d) mandated that result, but because neither § 506(d) nor any other provision of the Code applicable in Chapter 7 gave the debtor the power to strip down the lien. The question in this case, therefore, is whether any provision applicable in Chapter 12 provides that power....

*Harmon,* 101 F.3d at 581 (emphasis in original). Ultimately, the Eighth Circuit concluded that such power existed in this case under 11 U.S.C. § 1225(a)(5)(B), which must be interpreted by reference to bifurcation of claims into secured claims and unsecured claims under section 506(a). Further, the Eighth Circuit opined that other provisions of Chapter 12 suggested that lien-stripping was permissible in this case, specifically citing 11 U.S.C. § 1222(b)(2) and 11 U.S.C. § 1227(c). The Court ruled that the Plan, as permitted by the foregoing sections of Chapter 12, did indeed strip down the FSA's lien to the value of the FSA's secured claim.

No Circuit Court of Appeals has addressed the issue of whether a Chapter 7 debtor can "strip off" a totally unsecured junior lien from real property. This Court's research reveals that the lower courts which have addressed this issue are divided. Cases in which the courts have prohibited a Chapter 7 debtor from "stripping off" a wholly unsecured junior lien are: *Cunningham v. Homecomings Fin. Network (In re Cunningham),* 246 B.R. 241 (Bankr.D.Md.2000); *In re Cater,* 240 B.R. 420 (M.D.Ala.1999); *In re Virello,* 236 B.R. 199 (Bankr.D.S.C.1999); *Swiatek v. Pagliaro (In re Swiatek),* 231 B.R. 26 (Bankr.D.Del.1999); *Laskin v. First Nat'l Bank of Keystone (In re Laskin),* 222 B.R. 872 (9th Cir. BAP 1998); *Crossroads of Hillsville v. Payne,* 179 B.R. 486 (W.D.Va. 1995); *In re Mershman,* 158 B.R. 698 (Bankr.N.D.Ohio 1993); *Wise v. Diamond Sav. and Loan Co. (In re Wise),* 151 B.R. 116 (Bankr.N.D.Ohio 1992).

Cases in which the courts have permitted a Chapter 7 debtor to "strip off" a totally unsecured junior lien are: *In re Smith,* 247 B.R. 191 (W.D.Va.2000); *Farha v. First Am. Title Ins. (In re Farha),* 246 B.R. 547 (Bankr.E.D.Mich.2000); *Zempel v. Household Fin. Corp. (In re Zempel),* 244 B.R. 625 (Bankr.W.D.Ky.1999); *Yi v. Citibank (Maryland), N.A. (In re Yi),* 219 B.R. 394 (E.D.Va.1998); *Howard v. National Westminister Bank, U.S.A. (In re Howard),* 184 B.R. 644 (Bankr.E.D.N.Y. 1995).

The Court has given careful consideration to the arguments advanced in the foregoing cases in support of each position. Although the Eighth Circuit's ruling in *Harmon* is not directly on point, this Court is guided by that Court's interpreta-

tion of *Dewsnup*, and finds persuasive the Eighth Circuit's statement that *"Dewsnup* does not hold that § 506(d) prohibits lien-stripping in Chapter 7—it holds only that § 506(d) does not itself provide the authority for a debtor to strip down liens. . . . [N]either § 506(d) nor any other provision of the Code applicable in Chapter 7 gave the debtor the power to strip down the lien." *Harmon,* 101 F.3d at 581. Accordingly, this Court believes that the Eighth Circuit's comments in *Harmon* tip the scale in favor of adopting the position that a Chapter 7 debtor cannot utilize 11 U.S.C. § 506(d) to "strip off" a completely unsecured junior lien from real estate.

However, independent of the *Harmon* decision, this Court is more persuaded by the arguments promulgated by the courts that have ruled against lien-stripping. In *Laskin v. First Nat'l Bank of Keystone (In re Laskin),* the Ninth Circuit Bankruptcy Appellate Panel first determined that a Chapter 7 debtor has no standing under section 506(d) to "strip off" a totally unsecured junior mortgage, and second, ruled that even if a Chapter 7 debtor had standing, that lien-stripping was impermissible. The BAP opined:

> In contrast to Chapter 13, where claims must be allowed or disallowed to determine what gets paid through the plan, and the would-be secured creditor whose claim is allowed only as unsecured gets paid as an unsecured creditor, the allowance of a secured claim, or determination of secured status is meaningless in a Chapter 7 where the trustee is not disposing of the putative collateral. In *Dewsnup,* the Supreme Court held that § 506(d), which provides "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . .," does not allow a Chapter 7 debtor to "strip down" a partially secured lien when the creditor's claim is secured by a lien and has been fully allowed pursuant to § 502. *Id.* at 417, 112 S.Ct. [at] 773. Instead, § 506(d) serves the function of voiding a

lien when the claim it secures has not been allowed. *Id.* at 415–16, 112 S.Ct. [at] 773.

. . . .

*Dewsnup* teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d). Absent either a disposition of the putative collateral or valuation of the secured claim for plan confirmation in Chapter 11, 12 or 13, there is simply no basis on which to avoid a lien under § 506(d).

Further, whether the lien is wholly unsecured or merely undersecured, the reasons articulated by the Supreme Court for its holding in *Dewsnup,* 502 U.S. at 417, 112 S.Ct. [at] 773—that liens pass through bankruptcy unaffected, that mortgagee and mortgagor bargained for a consensual lien which would stay with real property until foreclosure, and that any increase in value of the real property should accrue to the benefit of the creditor, not the debtor or other unsecured creditors—are equally pertinent. . . .

. . . .

If the value of the Laskins' property should increase to a level at which the junior lien is no longer unsecured, Keystone should have the benefit of that increase in value, as bargained for by the parties.

. . . .

Section 506 was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code, not to confer an additional avoiding power on a Chapter 7 debtor. . . . In contrast to Chapter 13 debtors, who may use § 506 to determine the amount to be paid to a creditor as a secured claim in return for at least a chance of being paid as an unsecured creditor, Laskin seeks to use § 506(d) to expand the rights afforded Chapter 7 debtors by removing an encumbrance from his real property, which he intends to retain. This result is not authorized by the Bankruptcy

Code, and is clearly prohibited by *Dewsnup*.

*Laskin*, 222 B.R. at 876 (citation omitted).

In *In re Cater*, the district court concluded that a Chapter 7 debtor cannot use section 506(d) to "strip off" a wholly unsecured junior mortgage. In so ruling, the district court opined:

Here, Cater argues that *Dewsnup* is not controlling because "*Dewsnup* involved a lien that was secured by at least some equity in the property," whereas here no equity is behind American General's lien on Cater's property. The court disagrees. Although the lien at issue in *Dewsnup* was secured by at least some equity in the debtor's property, that factual distinction is not relevant. What is relevant is the Supreme Court's construction of § 506(d).

The Supreme Court made clear in *Dewsnup*, that as long as the claim is 'allowed' under § 502 and the claim is 'secured' by a valid lien, regardless of the lien's present value, *see id.* at 417, 112 S.Ct. at 778, subsection (d) does not apply. Here, because American General's claim is allowed under § 502 and is secured by a valid lien, the same result obtains. The fact that the value of the property is insufficient to cover the debt does not warrant a different result. . . .

Who knows what the real estate market will be tomorrow? By the time of sale in the future, a piece of real estate may have increased in value to cover a second-mortgage lien not covered by the property's value today. As in the *Dewsnup* case, American General should be able to enjoy "the benefit of any increase in the value of the property" until it is sold. *Dewsnup*, 502 U.S. at 417, 112 S.Ct. at 778.

*Cater*, 240 B.R. at 423–24 (footnote and citations omitted).

In *Crossroads of Hillsville v. Payne*, the district court reversed the bankruptcy court and determined that the Chapter 7 debtor could not "strip off" a creditor's totally unsecured judgment lien under section 506(d). The district court stated:

It is to be noted that the Court in *Dewsnup* was careful to strictly limit its holding to the facts of that particular case. *Dewsnup*, [502 U.S.] at 416–17, 112 S.Ct. at 778, 116 L.Ed.2d at 911. However, even though the particular facts of the *Dewsnup* case involved a consensual lien with a mortgagee-mortgagor relationship, as opposed to a nonconsensual judgment lien as in this case, subsequent cases have interpreted the *Dewsnup* decision to apply to all liens in a Chapter 7 bankruptcy whether consensual or nonconsensual.

. . . .

In rendering its decision, the Bankruptcy Court relied heavily upon the principle that a debtor receives a "fresh start" when discharged from bankruptcy. The *Dewsnup* opinion has been criticized as destroying the "fresh start" policy. However, the Supreme Court believed that the "fresh start" principle was only meant to limit the personal liability of the debtor after discharge and not extinguish the right of an *in rem* action against the property which has a lien attached to it. *Dewsnup*, 502 U.S. at 416–18, 112 S.Ct. at 777–78, 116 L.Ed.2d at 911–12. *See also In re Wrenn*, 40 F.3d 1162, 1164 (11th Cir.1994)(discharge in bankruptcy voids any judgment as to personal liability of the debtor but does not affect liability *in rem* ); *In re Rombach*, 159 B.R. 311, 313 (Bankr.C.D.Cal.1993)(discharge does not affect liability *in rem* and prepetition lien remain[s] enforceable after discharge). Thus, even though Crossroads' lien can not be avoided under § 506(d), once Payne is discharged in bankruptcy, he is no longer personally responsible for the Crossroads debt, but Crossroads may still have an *in rem* action against the Carroll County property itself. . . .

*Crossroads of Hillsville*, 179 B.R. at 490–91 (footnotes omitted).

In *In re Virello,* the bankruptcy court likewise found guidance in the Eighth Circuit's *Harmon* opinion and concluded that a Chapter 7 debtor cannot "strip off" a completely unsecured junior mortgage under section 506(d). The bankruptcy court opined:

This Court agrees with the Eighth and Ninth Circuits and many other jurisdictions that the *Dewsnup* decision stands for the proposition that § 506(d) alone does not operate to void a lien but that it must be used in connection with another statute such as § 722, § 1129, § 1225, or § 1325. Without more from Congress, a Chapter 7 debtor does not have standing to use § 506(d) to void a lien on real property which is abandoned or likely to be abandoned and therefore of no benefit to the estate.

... *Dewsnup* does not hold that § 506(d) prohibits lien-stripping in Chapter 7—it holds only that § 506(d) does not itself provide the authority for a debtor to strip down liens. *See Dewsnup,* 502 U.S. at 417, 112 S.Ct. at 778. The lien in *Dewsnup* remained on the property not because § 506(d) mandated that result, but because neither § 506(d) nor any other provision of the Code applicable in Chapter 7 gave the debtor the power to strip down the lien.

*Harmon v. Farmers Home Administration,* 101 F.3d at 581 recognizing that normally liens pass through bankruptcy unaffected citing *Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995) for the proposition that a lien was not extinguished where no proof of claim was filed and the debtor took no action to avoid the lien.

. . . .

While this Court has considerable equitable powers and views sympathetically the plight of truly distressed debtors who have no bankruptcy remedy against such valueless mortgage liens, especially in this day of the mass marketing of consumer mortgage credit, 125% lend-

ing, and equity lines of credit, this Court cannot stand in the shoes of Congress to make laws. Despite the arguments against *Dewsnup,* it is nevertheless the law as interpreted by the highest court of the land. To distinguish *Dewsnup* so easily in a "strip off" situation is to ignore its reasoning, whether right or wrong, which this Court cannot do.

This Court notes that *Dewsnup* does not apply to reorganization chapters and therefore debtors facing valueless mortgage liens may address them under an appropriate chapter of the bankruptcy laws. Furthermore, there is no per se rule against successive Chapter 7 and Chapter 13 filings, the so-called Chapter 20. *Johnson v. Home State Bank (In re Johnson),* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Additionally, valueless personal property liens, such as liens on automobiles, boats, and mobile homes, may be eliminated by redemption under § 722, *In re Williams,* 228 B.R. 910 (Bkrtcy.N.D.Ill.1999) and judicial liens on exempt assets may be avoided pursuant to the 1994 Amendments to the Bankruptcy Code to § 522(f). *See In re Raines,* 98–01463–W (Bkrtcy.D.S.C. 4/22/98)(Unpubl.).

*Virello,* 236 B.R. at 204, 206 (footnotes omitted).

In *Swiatek v. Pagliaro (In re Swiatek),* the bankruptcy court ruled that the Chapter 7 debtors could not rely on section 506(d) to "strip off" a totally unsecured junior judgment lien, stating:

In *Dewsnup* the Court held that § 506(d) does not allow the strip down of a lien that is secured and has been fully allowed pursuant to § 502. In *Dewsnup* the trustee had abandoned the property. The bankruptcy court reasoned that § 506(a) did not reach the property because, once abandoned, the estate had no interest in it and § 502(a) applies only to property in which the estate has an interest. The district court and the Court of Appeals for the Tenth Circuit affirmed the bankruptcy

court, as did the Supreme Court. . . . Thus, as long as the

> claim . . . has been "allowed" pursuant to § 502 . . . and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have *not* been allowed and secured.

*Dewsnup,* 502 U.S. at 415, 112 S.Ct. at 777 (emphasis in original).

. . . .

Section 502(a) provides that a claim is allowed unless an objection is filed. The record before us does not establish that an objection was ever filed or that the claim was disallowed for any other reason. Accordingly we find that the claim underlying the judgment lien is allowed. As in *Dewsnup,* however, the estate no longer has an interest in the claim inasmuch as Debtors have been discharged and the trustee filed a notice of abandonment on May 2, 1996. Furthermore, the bankruptcy case was closed on August 6, 1996, which also effects an abandonment to the debtor. 11 U.S.C. § 554(c). . . .

. . . .

As noted above, in the case at bench, Debtors have been discharged and the record before us does not show that there was an objection to the Defendant's claim before the discharge. Accordingly, pursuant to § 502, the claim has been allowed and is an allowed claim for purposes of § 506. Section 506 speaks to the creditor's interest in the estate's interest in Debtors' property. Since the case has been closed, the estate no longer has an interest in Debtors' property.

. . . .

Although in *Dewsnup* the claim was undersecured, not totally unsecured, we think the same result obtains under the *Dewsnup* rationale when the claim is completely unsecured in a chapter 7 and

no objection to the claim has been filed and sustained. The Supreme Court has decided that the increase over the judicially determined valuation of the property inures to the benefit of the mortgagee, not the debtor. *Dewsnup,* 502 U.S. at 417, 112 S.Ct. at 778. . . .

*Swiatek,* 231 B.R. at 28–30 (footnote omitted).

Finally, in *Cunningham v. Homecomings Fin. Network (In re Cunningham),* in which the bankruptcy court also determined that the Chapter 7 debtors could not use section 506(d) to "strip off" a totally unsecured junior mortgage, the court opined that:

> Section 506(d) standing alone does nothing. The section is efficacious only upon combination with a lien-avoiding provision of the bankruptcy code. This was pointed out in *Virello* where the court stated:
>
> > *Dewsnup* teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d). Absent either a disposition of the putative collateral or valuation of the secured claim for plan confirmation in Chapter 11, 12 or 13, there is simply no basis on which to avoid a lien under § 506(d).
>
> *In re Virello,* 236 B.R. at 206 (citing *In re Laskin,* 222 B.R. at 876). "[Section] 506(d) alone does not operate to void a lien but . . . it must be used in connection with another statute such as § 727, § 1129, § 1225, or § 1325." *Id.* at 204.

*Cunningham,* 246 B.R. at 247 (footnote omitted).

Here, the Court determines that the Fitzmaurices cannot use 11 U.S.C. § 506(d) to "strip off" the totally unsecured second and third mortgages of Union Planters Bank. The Fitzmaurices advance no other grounds upon which to avoid these two liens in their motion, and have not otherwise objected to Union Planters Bank's two junior mortgages.[4]

---

4. Likewise, the Fitzmaurices did not file an objection to the proof of claim filed by Union

Planters Bank for its first mortgage.

Accordingly, the Court will grant Union Planters Bank's motion to dismiss the motion filed by the Fitzmaurices seeking to "strip off" the two junior liens.

*Conclusion*

Based on the above discussion, the Court GRANTS the motion filed by Union Planters Bank, N.A., to dismiss the motion filed by Jimmie and Pamela Fitzmaurice to determine the secured status of Union Planters Bank under 11 U.S.C. § 506 and to avoid liens.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed. R. Bankr.P. 7052.