**In re Samuel William WEBSTER, Debtor.**

**Samuel William Webster, Plaintiff,**

**v.**

**Key Bank, Defendant.**

**In re Gregory Lee Wade and Rose Marie Wade, Debtors.**

**Gregory Lee Wade, et al., Plaintiffs,**

**v.**

**Citifinancial, Defendant.**

**Bankruptcy Nos. 01–65132, 02–61807. Adversary Nos. 02–6070, 02–6088.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Nov. 1, 2002.

Donald M. Miller, Canton, OH, for Debtor.

Phyllis A. Ulrich, Carlisle, McNellie, Rini, Kramer & Ulrich, Cleveland, OH, for Defendant.

## MEMORANDUM OF DECISION

RUSS KENDIG, Bankruptcy Judge.

Before the court are two adversary proceedings that were consolidated for decision in the interest of judicial economy. The court must determine whether Chapter 7 debtors can utilize 11 U.S.C. § 506 to avoid inferior mortgages when the balances owed on superior mortgages exceed the property's value.

The court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334(a) and the general order of reference entered in this district on July 16, 1984. These are core proceedings under 28 U.S.C. § 157(b)(2)(K). The following constitute the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. Facts and Arguments

### A. The Webster Case

On November 28, 2001, Samuel William Webster (hereafter "Webster") filed a Chapter 7 bankruptcy case. On March 8, 2002, Webster filed a motion to establish the secured value of residential real property located at 905 49th Street, N.E., Canton, Ohio 44714. Webster alleged that the property was worth between $131,200.00 [1] and $150,000.00.[2] Three mortgages encumbered the property. The first mortgage to Bank of America had a balance of $114,350.00. The second mortgage to United Bank had a balance of $50,000.00. The third mortgage to Key Bank had a balance of $50,000.00. Webster moved the court to find that the third mortgage to Key Bank had no value because the value of the property was less than the total owing on the first two mortgages. Key Bank did not file a response. On April 15, 2002, the court entered an order establishing the secured value of Key Bank's mortgage at zero.

On May 2, 2002, Webster initiated this adversary proceeding to determine the extent and validity of Key Bank's lien. Webster contends that the mortgage, previously determined to have a secured value of zero, is invalid and should be avoided pursuant to § 506.

On June 3, 2002, Key Bank responded to Webster's complaint by filing a motion to dismiss, alleging that the complaint failed to state a claim upon which relief can be granted. For argument's sake, Key Bank conceded that no equity exists in Webster's property beyond the value of superior liens. Even so, Key Bank argues that its lien is not avoidable. First, Key Bank argues that a claim has to be disallowed under 11 U.S.C. § 502(a) before it can be avoided under § 506(d). Webster's motion to determine the secured value of Key Bank's lien merely established the lien's value; it did not attack the lien's validity or disallow the underlying claim. Second, Key Bank argues that the lien is not avoidable where the trustee has abandoned the estate's interest in the property to which it attaches. Key Bank argues that the lien avoidance issue is moot because the trustee abandoned the estate's interest in Webster's property.

On June 13, 2002, Webster filed a response to Key Bank's motion to dismiss and a motion for summary judgment. Webster argues that the April 15, 2002 order establishing the secured value of Key Bank's claim is res judicata and that the filing of a claim does not establish the claim's secured value. He asserts that a fully unsecured mortgage cannot be considered an allowed secured claim. Further, Webster argues that no order of abandonment has been entered as to this property and that the filing of a no asset report is not the same as abandonment. He argues that property is only abandoned upon the closing of a case under 11 U.S.C. § 554(c), and cases holding that abandonment precludes lien avoidance misconstrue § 506(a).

On June 28, 2002, Key Bank responded, distinguishing the cases Webster cited.

### B. The Wade Case

On April 23, 2002, Gregory Lee and Rose Marie Wade (hereafter "Wade") filed a Chapter 7 bankruptcy case. On May 8, 2002, Wade requested that the court establish the secured value and avoid the lien of Citifinancial on Wade's residential real estate. Wade asserted that the property's

---

**1.** This valuation was based on the county auditor's appraisal.

**2.** This valuation was based on Webster's opinion.

fair market value was between $101,-800.00 [3] and $102,000.00.[4] Two mortgages encumbered the property. The first mortgage to Chase had a balance of $114,119.00 and the second mortgage to Citifinancial had a balance of $16,000.00. Wade argued that Citifinancial's mortgage had no value under § 506. Citifinancial did not respond. On May 30, 2002, the court entered an order establishing the secured value of Citifinancial's mortgage at zero.

On June 7, 2002, Wade initiated an adversary proceeding to determine the extent and validity of Citifinancial's lien. Citifinancial did not answer and Wade filed a motion for default judgment. The court took the matter under advisement.

## II. Analysis

### A. *Dewsnup v. Timm*

The preeminent case discussing lien avoidance pursuant to § 506 in Chapter 7 cases is *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In this case, the debtors owned farmland encumbered by a deed of trust securing a debt in excess of the farmland's value. *Id.* at 412, 112 S.Ct. 773. The debtors filed bankruptcy and initiated an adversary proceeding to avoid the lien under § 506. *Id.* at 413, 112 S.Ct. 773. First, the debtors requested that the Court determine the value of the property under § 506(a) [5] to be $39,000.00, a value far less than the amount owing the deed of trust lienholder. *Id.* Second, the debtors requested that the

Court strip down the lien under § 506(d) [6] by reducing the lien's value to the judicially determined value of the property. *Id.*

The Court determined that lien avoidance is impermissible in this context. The Court adopted the lienholder's reading of §§ 506(a) and (d). *Id.* at 415, 112 S.Ct. 773.

> [T]he words "allowed secured claim" in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision. Rather, the words should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured. Because there is no question that the claim at issue here has been "allowed" pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have *not* been allowed and secured.

*Id.*

The Court applied the following reasoning in support of this reading. First, the Court found that valuing the debtors' property pursuant to § 506(a) would effectively freeze the lienholder's interest at its current value, causing the lienholder to lose the benefit of any increase in value of the land over time. *Id.* at 417, 112 S.Ct. 773. This would result in a windfall to the debtors. *Id.* Instead, the Court deter-

---

**3.** This valuation was based on the homeowners' opinion.

**4.** This valuation was based on an appraiser's opinion.

**5.** Section 506(a) provides in pertinent part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's inter-

est in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a).

**6.** Section 506(d) provides in pertinent part:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void.

11 U.S.C. § 506(d).

mined that the lien is not released until a foreclosure proceeding ensues, which is consistent with the bargain between a mortgagor and mortgagee. *Id.* Second, the Court noted that historically a lien passed through bankruptcy unaffected and that Congress must have enacted the bankruptcy code with a full understanding of this historical, pre-code practice. *Id.* at 418–19, 112 S.Ct. 773. Although recognizing the ambiguity between §§ 506(a) and (d), the Court concluded that it was improper to create a new rule allowing an avoidance action contrary to long held bankruptcy principles. *Id.* at 419–20, 112 S.Ct. 773. Therefore, the Court held that § 506(d) did not permit the debtors to avoid the lien because the lienholder's claim was secured by the lien and fully allowed under § 502. *Id.* at 417, 112 S.Ct. 773. The Court limited the holding to the facts of the case. *Id.* at 416–17, 112 S.Ct. 773.

## B. Post-*Dewsnup*

The *Dewsnup* decision has been roundly criticized,[7] and not always followed,[8] but, as one court wrote, "it remains the law of the land." *Cunningham v. Homecomings*

*Financial Network (In re Cunningham),* 246 B.R. 241, 246 (Bankr.D.Md.2000), *aff'd sub nom, Ryan v. Homecomings Financial Network,* 253 F.3d 778 (4th Cir.2001). The majority of courts have followed the Court's decision,[9] which is supported by legislative history focusing on the disallowance of a claim under § 502 and not the determination of a claim as secured or unsecured under § 506(a):

> Subsection (d) [of § 506] permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 357 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6313.

## C. Webster

■ Webster relies upon *Yi v. Citibank (Maryland), N.A. (In re Yi),* 219 B.R. 394 (E.D.Va.1998) in arguing that *Dewsnup* is inapplicable because the debtors in *Dewsnup* were attempting to avoid a partially

7. Mary Josephine Newborn, *Undersecured Creditors in Bankruptcy: Dewsnup, Nobelman, and the Decline of Priority,* 25 Ariz. St. L.J. 547, 562 (1993); *see also Richards v. Citicorp Mortgage, Inc. (In re Richards),* 151 B.R. 8, 10 n. 4 (Bankr.D.Mass.1993) ("The *Dewsnup* opinion has been criticized as 'the strangest case of statutory interpretation in recent years . . . .' ") (quoting Mark E. MacDonald, *Confirmation by Cramdown through the New Value Exception in Single Assets Cases,* 1 ABI L.J. 65, 75 (1993)).

8. *Farha v. First Am. Title Ins. (In the Matter of Farha),* 246 B.R. 547 (Bankr.E.D.Mich.2000); *Zempel v. Household Finance Corp. (In re Zempel),* 244 B.R. 625 (Bankr.W.D.Ky.1999); *Yi v. Citibank (Maryland), N.A. (In re Yi),* 219 B.R. 394 (E.D.Va.1998); *Howard v. National Westminister Bank, U.S.A. (In re Howard),* 184 B.R. 644 (Bankr.E.D.N.Y.1995).

9. *See Laskin v. First Nat'l Bank of Keystone (In re Laskin),* 222 B.R. 872 (9th Cir. BAP 1998); *In re Fitzmaurice,* 248 B.R. 356 (Bankr.W.D.Mo.2000); *In re Virello,* 236 B.R. 199 (Bankr.D.S.C.1999); *In re Willis,* 157 B.R. 617 (Bankr.N.D.Ohio 1993); *Wise v. Diamond Sav. & Loan Co. (In re Wise),* 151 B.R. 116 (Bankr.N.D.Ohio 1992). The authors of a highly respected bankruptcy periodical also agree with the Court's decision and analysis. King et al., *Collier on Bankruptcy,* § 506.06[1][a] (15th ed.2002). Other courts have expanded *Dewsnup's* holding by applying it to cases involving nonconsensual liens. *Swiatek v. Pagliaro (In re Swiatek),* 231 B.R. 26 (Bankr.D.Del.1999); *Crossroads of Hillsville v. Payne,* 179 B.R. 486 (W.D.Va.1995); *In re Mershman,* 158 B.R. 698 (Bankr. N.D.Ohio 1993).

unsecured lien, whereas he is attempting to avoid a fully unsecured lien. The former is commonly referred to as stripping down, the latter as stripping off. *In re Fitzmaurice*, 248 B.R. 356, 357 n. 2. (Bankr.W.D.Mo.2000). Contrary to the *Yi* court's reasoning, this is a distinction without a difference according to the majority of courts post-*Dewsnup*.[10] The analysis does not change depending on the available equity in the collateral to which the lien attaches. First, the claim has to be disallowed. Then, the claim can be avoided.

Webster argues that the claim has not been allowed where its secured value has been determined to be zero. But, courts have found that the allowance of a secured claim in a Chapter 7 proceeding *means nothing unless the trustee is disposing of the collateral to which the lien is attached. Fitzmaurice*, 248 B.R. at 361 (citing *Laskin v. First Nat'l Bank of Keystone (In re Laskin)*, 222 B.R. 872, 876 (9th Cir. BAP 1998)).

In contrast to Chapter 13, where claims must be allowed or disallowed to determine what gets paid through the plan, and the would-be secured creditor whose claim is allowed only as unsecured gets paid as an unsecured creditor, the allowance of a secured claim, or determination of secured status is meaningless in a Chapter 7 where the trustee

is not disposing of the putative collateral.

*Laskin*, 222 B.R. at 876. Further, if no claim is filed under § 501 and allowed under § 502, as occurs in a no asset case, then a lien cannot be avoided under § 506(d).

*Dewsnup* teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d). Absent either a disposition of the putative collateral or valuation of the secured claim for plan confirmation in Chapter 11, 12 or 13, there is simply no basis on which to avoid a lien under § 506(d)....

....

Section 506 was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code, not to confer an additional avoiding power on a Chapter 7 debtor.... In contrast to Chapter 13 debtors, who may use § 506 to determine the amount to be paid to a creditor as a secured claim in return for at least a chance of being paid as an unsecured creditor, [debtor] seeks to use § 506(d) to expand the rights afforded Chapter 7 debtors by removing an encumbrance from his real property, which he intends to retain. This result is not authorized by the Bankruptcy

---

**10.** *See Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir.2001); *Laskin v. First Nat'l Bank of Keystone (In re Laskin)*, 222 B.R. 872 (9th Cir. BAP 1998); *In re Fitzmaurice*, 248 B.R. 356 (Bankr.W.D.Mo. 2000); *Cater v. American Gen. Finance (In re Cater)*, 240 B.R. 420 (M.D.Ala.1999); *In re Virello*, 236 B.R. 199 (Bankr.D.S.C.1999); *Swiatek v. Pagliaro (In re Swiatek)*, 231 B.R. 26 (Bankr.D.Del.1999); *Crossroads of Hillsville v. Payne*, 179 B.R. 486 (W.D.Va.1995); *In re Mershman*, 158 B.R. 698 (Bankr. N.D.Ohio 1993); *Wise v. Diamond Sav. & Loan Co. (In re Wise)*, 151 B.R. 116 (Bankr.

N.D.Ohio 1992). *Cf. Laskin*, 222 B.R. at 876 ("[*Yi*] conclude[s] that, since there was no equity to which the lien in question could attach and there could be no secured claim under § 506(a), the lien could therefore be avoided under § 506(d). With all respect to [that court], we think that analysis reverses the statutory process.... Further, whether the lien is wholly unsecured or merely undersecured, the reasons articulated by the Supreme Court for its holding in *Dewsnup* ... are equally pertinent. Neither Laskin nor the [court] in *Yi* ... propound any rationale for distinguishing.") (citation omitted).

Code, and is clearly prohibited by *Dewsnup.*

*Id.* (citation omitted).[11]

■■■ Section 506(d) is not self-executing and must be triggered by the exercise of some other power, such as 11 U.S.C. § 722, 1129, 1225 or 1325. *In re Virello,* 236 B.R. 199, 204 (Bankr.D.S.C.1999). Section 506 may be the powder, but other bankruptcy code sections are the fuse. A Chapter 7 debtor acting alone may not utilize § 506(d) to avoid a lien.

It may be useful to analogize to another discipline. Valuable elements may be contained in a solution or in suspension. The solution itself is not valuable without a precipitant (or precipitating agent),[12] which causes the elements in the solution or suspension to separate, normally as a compound, so that they may be removed and used. Lien avoidance is a valuable power that remains in solution. The power is precipitated in Chapter 11, 12, or 13 through the claims allowance process in order to determine what claims must be paid as secured. (Or through the sale process for the same reason.) The claims allowance process is the precipitating agent. There can be no plan to confirm in Chapter 7, and therefore there is no precipitating agent in the absence of a sale by the trustee. The power remains in solution.

Webster cannot avoid Key Bank's lien pursuant to § 506.

## D. Wade

■■■ Motions for default judgment are reviewed under Federal Rule of Civil Procedure 55, applicable to bankruptcy cases through Federal Rule of Bankruptcy Procedure 7055. A motion for default judgment is not granted as a matter of right. *American Express Centurion Bank v. Truong (In re Truong),* 271 B.R. 738, 742 (Bankr.D.Conn.2002). The court, in its discretion, can require the moving party to produce some evidence supporting the relief requested. *Id.; General Electric Capital Corp. v. Bui (In re Bui),* 188 B.R. 274, 276 (Bankr.N.D.Cal.1995). Likewise, judgments for default are only granted upon a complaint that alleges well pleaded facts and that is well grounded in law. *Ryan v. Homecomings Financial Network,* 253 F.3d 778, 780 (4th Cir.2001); *Yi v. Citibank (Maryland), N.A. (In re Yi),* 219 B.R. 394, 396 (E.D.Va.1998); *Bui,* 188 B.R. at 276. A plaintiff must demonstrate a prima facie case by competent evidence to obtain an order of default. *Bui,* 188 B.R. at 276.

Wade does not allege a cause of action well grounded in law for the reasons stated above. Accordingly, Wade cannot utilize § 506 to avoid Citifinancial's lien.

**11.** *Cf. Talbert v. City Mortgage Services (In re Talbert),* 268 B.R. 811 (Bankr.W.D.Mich. 2001), which goes further. The *Talbert* court opined that a Chapter 7 trustee's job is not to administer assets but to reduce to money the debtor's nonexempt interest in the assets so the proceeds may be distributed to unsecured creditors. *Id.* at 815–19. Therefore, the *Laskin* court's characterization of the Chapter 7 trustee's distribution of proceeds from the sale of assets in which the estate claims an interest as payment on account of an allowed secured claim is inaccurate. *Id.* According to the *Talbert* court's interpretation, even the

trustee's job of liquidating and distributing property of the Chapter 7 estate does not require (or permit) the allowance of secured claims under § 506. *Id.* The *Talbert* court opined that the Chapter 7 distribution process is nothing more than the trustee's accounting to the lienholder for the share of the proceeds realized from the Chapter 7 trustee's sale of both the estate's interest in the subject asset and the lienholder's interest. *Id.* at 819.

**12.** A chelating agent in the case of a metal.

### III.  Conclusion

Debtors Webster and Wade are attempting to avoid unsecured liens on real property pursuant to § 506.  On the basis of *Dewsnup* and its progeny, the Court finds Webster and Wade cannot utilize § 506 to avoid these liens.