**In re Michael BOWMAN Sharon Bowman, Debtors.**

**Michael Bowman Sharon Bowman, Plaintiff,**

v.

**Ocwen Federal Bank, Defendant.**

Bankruptcy No. 5–02–01758.
Adversary No. 5–03–50002A.

United States Bankruptcy Court,
M.D. Pennsylvania.

Oct. 8, 2003.

John Keller, Esq., for Plaintiffs/Debtors.

---

*OPINION* [1]

JOHN J. THOMAS, Chief Judge.

The procedural posture of this adversary is as follows. The Debtors filed a Voluntary Petition under Chapter 7 on April 25, 2002. A review of the docket reflects this case was unremarkable in the sense there was generally no creditor or trustee activity other than the meeting under Section 341 which resulted in a Final Report by the Trustee in a no asset case. On August 26, 2002, the Debtors were granted a Discharge and a Final Decree was entered shortly thereafter. In October of 2002, the Debtors filed a Motion to Reopen their case with the stated purpose they were doing so to file an adversary complaint against the holder of a second mortgage. The Court provisionally granted the Motion to Reopen in December of 2002, conditioned on the Debtors filing this adversary complaint against Ocwen Federal Bank within thirty days of the date of the Order reopening the case. Debtors did file such a Complaint naming Ocwen Federal Bank as a Defendant on January 6, 2003. The Complaint was timely served on the Defendant Bank and, subsequent to the time of the answer period, the Debtors filed a Motion for Default Judgment requesting the Court find the debt with the Defendant unsecured and avoidable pursuant to Section 506(a) and 506(d) of the Bankruptcy Code. The Court set a hearing on the default judgment and, after a dialogue with counsel for Debtors, directed a brief be filed addressing the issue whether the Supreme Court case of *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773 778, 116 L.Ed.2d 903 (1992), precluded these Chapter 7 Debtors from attempting to avoid, in its entirety, the second mortgage lien of the Defendant

---

1. Drafted with the assistance of Richard P. Rogers, Law Clerk.

under the above-referenced bankruptcy subsections.

The Debtors' position can be succinctly stated as follows. The *Dewsnup* decision can be distinguished from the instant facts because in *Dewsnup,* the court held a debtor could not "strip down" an under-collateralized lien to the extent it exceeded the value of the asset. In this case, the Debtors seek to "strip off" a totally unsecured lien by reading Code Section 506(a) in conjunction with 506(d). Debtors indicate the Supreme Court limited its holding to the specific facts of that case and, therefore, because *Dewsnup* involved a "strip down" as opposed to a "strip off", *Dewsnup* does not apply. Debtors recognize that courts are split on whether a chapter 7 debtor may avoid a wholly unsecured lien but cite the following cases in support of their position that "strip offs" of totally unsecured liens are permissible. See *In re Farha,* 246 B.R. 547 (Bankr.E.D.Mich. 2000); *In re Zempel,* 244 B.R. 625 (Bankr. W.D.Ky.1999), *In re Yi,* 219 B.R. 394 (E.D.Va.1998), *In re Howard,* 184 B.R. 644 (Bankr.E.D.N.Y.1995).

While resolution of the instant issue is not new to bankruptcy jurisprudence there is a dearth of case law at the circuit court level. In direct opposition to the case law cited above in support of Debtors' position are cases that find *Dewsnup v. Timm* applies equally to "strip offs" as well as "strip downs" and support the general holding that a debtor may not "strip off" allowed secured liens under Section 506(d). See *Ryan v. Homecomings Financial Network (In re Ryan),* 253 F.3d 778 (4th Cir.2001); *Laskin v. First National Bank of Keystone (In re Laskin),* 222 B.R. 872 (9th Cir. BAP 1998); *In re Bessette,* 269 B.R. 644 (Bankr.E.D.Mich.2001); *In re Swiatek,* 231 B.R. 26 (Bankr.D.Del.1999); *In re Fitzmaurice,* 248 B.R. 356 (Bankr. W.D.Mo.2000). Determining the better

view for resolution of this issue is that espoused by the Fourth Circuit in the case of *In re Ryan,* this Court finds a Chapter 7 debtor may not utilize 11 U.S.C. § 506(d) to "strip off" an allowed junior lien when there are, as here, senior liens that exceed the fair market value of the real property.

Sections 506(a) and (d) read as follows:

§ 506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to set-off, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless-

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

*In re Ryan* presented facts very similar to those in the instant case. There, a complaint was filed requesting the court to "strip off" a second deed of trust because it was wholly unsecured. As in this case, the defendant bank did not file an answer

to the complaint resulting in a request for the entry of a default judgment by the debtors. The bankruptcy court declined, as this Court did, to enter a default judgment. The *Ryan* court entered an order denying the motion wherein, this Court requested that the issue be briefed. The appellants in the *Ryan* case, like the Debtors in this case, argued that *Dewsnup* controls only a "strip down" of a partially secured lien and not a "strip off" of a wholly unsecured lien.

*Ryan* refutes Debtors' position by relying on *Dewsnup*. First, *Ryan* addressed a practical approach to the rights of creditors in this situation.

> The practical effect of [Appellants'] argument is to freeze the creditor's secured interest at the judicially determined valuation. By this approach, the creditor would lose the benefit of any increase in the value of the property by the time of the foreclosure sale. The increase would accrue to the benefit of the debtor ... as a "windfall."
>
> [T]he creditor's lien stays with the real property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee. The voidness language sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security. Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor....
>
> ...
>
> Under the Bankruptcy Act of 1898, a lien on real property passed through bankruptcy unaffected. This Court recently acknowledged that this was so. See *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825, 114 L.Ed.2d 337[ ] (1991) ("Ordinarily, liens and other secured interests survive bankruptcy"); *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66[ ]

(1991) ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem").

*Ryan v. Homecomings Financial Network*, 253 F.3d at 781 citing *Dewsnup*, 502 U.S. at 417–18, 112 S.Ct. 773 (internal footnote omitted).

The second attack is statutory.

> [T]o attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims to the extent that they become "unsecured" for purposes of § 506(a) without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles.

*Id.* at 782.

The Supreme Court accepted the position of the respondents in *Dewsnup* that the words "allowed secured claim" in Section 506(d) should not be read as an indivisible term of art but, rather, should be read term-by-term to refer to claims that are first, allowed, and second, secured. *Dewsnup v. Timm*, 112 S.Ct at 777.

The common theme running through all the cases above, even those in support of the Debtors' position, is that there was no claim process initiated by the debtors in those cases. *Dewsnup* does not hold Section 506(d) prohibits lien stripping but, rather, it does not provide the authority for a debtor to strip down liens. *In re Fitzmaurice*, 248 B.R. at 360. The *Fitzmaurice* court wrote, the lien in *Dewsnup* remained not because 506(d) mandated that result, but because 506(d) read in conjunction with any other provision under chapter 7 did not give the debtor the power to strip down the lien. This is consistent with the analysis found in *In re Laskin*, wherein the court contrasted the claim allowance procedure in a chapter 13

with that in a chapter 7. See also *In re Lange*, 120 B.R. 132, 135 (9th Cir. BAP (Or.), 1990). The *Laskin* court looked to the marriage of Section 1322(b)(2) with Section 506(d) and found that Section 506(d) served the function of voiding a lien when the claim it secures has not been allowed. *Laskin v. First National Bank of Keystone*, 222 B.R. at 876.[2] The Eighth Circuit in the case of *Harmon v. Farmers Home Administration*, 101 F.3d 574 (8th Cir.1996) made the same finding as the *Laskin* court albeit in a chapter 12 case. There, the Eighth Circuit concluded a debtor could "strip down" in a chapter 12 case because the power to do so was found in 11 U.S.C. § 1225(a)(5)(B). In short, these cases which do not permit lien stripping in a chapter 7 case, all find that some claim allowance process is a predicate for avoiding a lien under Section 506(d). In the instant case, no such claim allowance process was initiated and, in fact, the Debtors received a discharge and the case was closed.[3] Under these circumstances, the Court finds the underlying claim is secured by a lien that has been fully allowed pursuant to Section 502.

Each of the cases cited by the Debtors in support of their position latches on to an acknowledgment by the Supreme Court in *Dewsnup* that its decision was fact specific and that an application of Section 506(d) would have to be done on a case-by-case basis. With that said, and with all due respect to those courts, they found the liens could be stripped off because the liens were "unsecured" and therefore could not possibly be an allowed secured claim under Section 506(d). This Court is of the opinion that these courts have misapplied the *Dewsnup* analysis resulting in a conclusion not consistent with the dictates of the Bankruptcy Code.

In conclusion, the Court holds that an allowed unsecured consensual lien may not be stripped off in a chapter 7 proceeding pursuant to the provisions of 11 U.S.C. §§ 506(a) and (d).

An Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, **IT IS HEREBY**

**ORDERED** that the Motion for Default filed by the Plaintiff is denied and the underlying Complaint is dismissed.

2. The debtors argue that pursuant to *McDonald v. Master Financial*, 205 F.3d 606 (3rd Cir.2000), the Third Circuit would apply the reasoning of that case to distinguish *Dewsnup* and not apply it to the instant facts. *McDonald* was a case that analyzed 11 U.S.C. §§ 506(a) and 1322(b)(2). The opinion tangentially touched on the application of Section 506(d) to the facts of that case and the court took no position on whether *Dewsnup's* rejection of lien stripping in a chapter 7 would apply to a wholly unsecured lien. The analysis of *McDonald* provides little guidance in the resolution of the instant matter and its ultimate holding does not apply to the facts of this case.

3. Both the *Laskin* and *Swiatek* cases address the standing of the debtors to bring the actions in those respective cases. In both instances, the court determined the debtor did not have standing. In both cases, the chapter 7 debtor received a discharge. *In re Laskin* determined that Section 506(d) did not confer standing on a debtor in a chapter 7 case to attempt to strip off the underlying lien. *In re Swiatek* indicated the estate had no further interest in the underlying claim because the debtors had been discharged. Both courts, however, proceeded to make an analysis of Section 506(d) as it applies to strip offs in a chapter 7 case. The instant matter was ordered to be briefed by the court and because the court did not raise a standing issue and it is a matter of first impression in this bankruptcy court, the court will proceed as if the debtor has standing to bring this adversary.